IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BON AYRE LAND, LLC, | § | |
| | § | No. 25, 2016 |
| Appellee Below-Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| BON AYRE COMMUNITY | § | C.A. No. K15A-05-002 |
| ASSOCIATION, | § | |
| | § | |
| Appellant Below-Appellee. | § | |
| | § | |

Submitted: September 14, 2016
Decided: October 10, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

L. Vincent Ramunno, Esquire (*Argued*), Ramunno & Ramunno, P.A., Wilmington, Delaware, for Appellant Bon Ayre Land, LLC.

Brian S. Eng., Esquire (*Argued*), James G. McGiffin, Jr., Esquire, Community Legal Aid Society, Inc., Dover, Delaware, for Appellee, Bon Ayre Community Association.

Jeffrey M. Weiner, Esquire, Law Offices of Jeffrey M. Weiner, P.A., Wilmington, Delaware, *Amicus Curiae* for the First State Manufactured Housing Association.

**STRINE**, Chief Justice, for the Majority:

# I. INTRODUCTION

This is a case between the owner of a manufactured homes community, Bon Ayre Land, LLC (the "Landowner"), and an association that represents the affected homeowners, Bon Ayre Community Association (the "Homeowners' Association"), about what Delaware law requires the Landowner to show to increase rent above inflation. Their dispute arises under Chapter 70 of Title 25 of the Delaware Code, commonly known as the Rent Justification Act.[1] The Act allows a manufactured home community landowner to increase rent by the rate of inflation without showing more.[2] But, to raise rent by more than inflation, the Act sets out three conditions a landowner must satisfy. Besides having a clean bill of health in terms of safety violations—the first condition[3]—the owner must show that "[t]he proposed rent increase is directly related to operating, maintaining or improving the manufactured home community, *and* justified by 1 or more factors listed under subsection (c) of [§ 7042]."[4] Subsection (c) lists eight factors including capital improvements and property tax increases; the one at issue here is market rent: "that rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners."[5]

---

[1] *See* 25 *Del. C.* §§ 7040–46.
[2] *Id*. § 7042(a).
[3] *Id*. § 7042(a)(1).
[4] *Id*. § 7042(a)(2) (emphasis added).
[5] *Id*. § 7042(c)(7).

Among its many arguments, the Landowner argues that the Superior Court erred in giving effect to the word "and" in § 7042 of the Act and that the Landowner ought to be allowed to justify a rent increase based on market rent alone. The Landowner admits that it failed to present any evidence of its proposed rent increases being "directly related to operating, maintaining or improving" the community.[6] But, the Landowner argues that the Act cannot be read sensibly as it is plainly written and that the term "and" in § 7042(a)(2) should be read as "or." If adopted, the Landowner's reading would enable a landowner to increase rent solely by demonstrating the existence of any factor in § 7042(c), including the sole factor relied upon here, which is that market rents are higher than the actual rents charged in the community.

In this decision, we affirm the well-reasoned decision of the Superior Court giving effect to the key word "and" in § 7042. The stated purpose of the Rent Justification Act is to "accommodate the conflicting interests of protecting manufactured home owners, residents and tenants from unreasonable and burdensome space rental increases while simultaneously providing for the needs of manufactured home community owners to receive a just, reasonable and fair return on their property."[7] To accomplish this purpose, the Act allows landowners to increase their rent by an inflation measure—CPI-U—without any opportunity for

---

[6] *Id.* § 7042(a)(2).
[7] *Id.* § 7040.

homeowners to object. But, the Act provides constraints on increases beyond the rate of inflation by requiring that a landowner meet the test in § 7042. Contrary to the Landowner's argument, nothing is absurd about the use of "and" in joining § 7042's three conditions. Rather, by requiring a showing that above-inflation rent increases were related to community expenses, the General Assembly has simply said that a landowner must show that its costs of operation have increased in a manner that has caused the landowner's "just, reasonable and fair return on their property" to decline.[8] Only once that showing has been made is a landowner eligible, using the factors set forth in § 7042(c), to obtain the right to raise rents in excess of the statutory inflation adjustment. Consistent with proper principles of interpretation, the Superior Court gave effect to the clear language of the Act and gave it an interpretation that is consistent with the Act's stated purpose.

Because the Landowner concededly made no showing that its proposed rental increase was "directly related to operating, maintaining or improving" the community, the Superior Court properly reversed the arbitrator's ruling that the Landowner could raise rents in excess of CPI-U. Thus, we affirm.

In this decision, we also redress an issue that is likely to recur before arbitrators and the Superior Court under the dispute resolution section of the Rent Justification Act. In deciding the case on alternative grounds, the Superior Court

---

[8] *Id.*

held that a landowner may not obtain the benefit of § 7042(c)(7)'s market rent factor except by producing evidence of actual rents charged in other rental communities.[9] This ruling was erroneous because the Act does not impose this restriction and does not by its terms foreclose a landowner from relying on other evidence of prevailing market rent. The ruling is also problematic because the Act does not provide for parties or the arbitrator to use compulsory process to obtain evidence from third parties.[10] As a result, the Act does not give landowners (or homeowners for that matter) the tools to compel third parties to provide sensitive information, such as the actual rental agreements in place between landowners and homeowners in other communities. As a general matter, the Act provides that the arbitrator is to use the Delaware Uniform Rules of Evidence "as a guide,"[11] and, therefore, parties may support their position about market rental rates with any evidence meeting the traditional standards for relevance and reliability. Thus, landowners may use any evidence in keeping with the Act's provisions for arbitration found in § 7043(d)–(g) to prove that their situation meets the justification.

---

[9] *Bon Ayre Cmty. Ass'n, Inc. v. Bon Ayre Land, LLC*, No. K15A-05-002, 2016 WL 241864, at *10 (Del. Super. Ct. Jan. 12, 2016).
[10] *See* 25 *Del. C*. §§ 7043(d)–(i), 7044 (describing procedure for arbitration and appeal).
[11] *Id*. § 7043(d).

## II.  BACKGROUND[12]

### A.  The Rent Justification Act

This dispute arises under Subchapter III of the Delaware Manufactured Home Owners and Community Owners Act, which is officially titled "Affordable Manufactured Housing" but has apparently come to be known more commonly as the "Rent Justification Act."  Among other things, the Act governs rent increases in manufactured housing communities by requiring a landowner to comply with certain statutory requirements before raising the rent above the average annual increase in the Consumer Price Index For Urban Consumers in the Philadelphia-Wilmington-Atlantic City area—referred to as CPI-U—for the thirty-six months preceding the proposed increase, which in this case was 1.6%.[13]

A landowner that wishes to raise the rent above the CPI-U must engage homeowners in a regimented process under § 7043 involving notice and a meeting with the homeowners.  Any homeowner who does not accept the proposed increase after the meeting has 30 days to "petition the [Delaware Manufactured Home Relocation] Authority to appoint a qualified arbitrator to conduct nonbinding

---

[12] These facts are taken from the record as provided by the parties on appeal unless otherwise noted.

[13] Exhibit B to Appellant's Opening Br. (Decision of the Arbitrator, *Bon Ayre Cmty. Ass'n v. Bon Ayre Land, LLC*, Petitions # 1-2015 & 2-2015, at 7 (Apr. 23, 2015)) [hereinafter *Arbitrator's Decision*].

arbitration proceedings."[14]  The central issue in this case is what a landowner must show the arbitrator to raise the rent above the CPI-U.

## B.  The Parties

The Landowner owns a housing community for 50-and-over residents called Bon Ayre.  The community is located in Smyrna, Delaware and consists of 194 manufactured homes.  The Homeowners' Association is a non-profit corporation organized to represent the interests of the individuals who own the manufactured homes and lease the underlying plots of land from the Landowner.  In this case, the Homeowners' Association represents four sets of homeowners.

## C.  The Current Dispute

In December 2014 and January 2015, the Landowner notified four sets of homeowners that it wanted to raise their monthly rent in excess of CPI-U.  The Landowner met with the homeowners to explain the increase as required under § 7043(b).  The Homeowners' Association challenged the proposed rent increase in part on the ground that it was not "directly related to operating, maintaining, or improving the community," which the Homeowners' Association argued was required under § 7042(a)(2).  An arbitrator heard the challenge.

---

[14] 25 *Del. C.* § 7043(c).

## D.    The Arbitration

After hearing from both sides, the arbitrator issued a decision on April 23, 2015, granting a rent increase above the CPI-U but not to the amount sought by the Landowner.  The arbitrator addressed the statutory interpretation issue in this case by finding that "the only way to logically interpret . . . § 7042 is that if the rent increase is not being sought for capital improvements, ordinary wear and tear or changes in operating and maintenance expenses then it must be justified by market rent."[15]  In other words, the arbitrator read the word "and" out of § 7042 and held that market rent alone may justify a rent increase above inflation, even if the Landowner presented no evidence of the increase being related to "operating, maintaining or improving" the community.[16]  The Homeowners' Association appealed the arbitrator's decision to the Superior Court, as permitted under § 7043(c) of the Act.[17]

## E.    The Superior Court's Decision

The Superior Court disagreed with the arbitrator's interpretation of § 7042(a)(2) and held that the language of the subsection established "a compound condition" requiring both parts to be met.[18]  The Superior Court also disagreed with the arbitrator's finding that it is redundant to read the Rent Justification Act as

---

[15] Arbitrator's Decision, *supra* note 13, at 9.
[16] 25 *Del. C.* § 7042(a)(2).
[17] *Id.* § 7043(c).
[18] *Bon Ayre Cmty. Ass'n, Inc. v. Bon Ayre Land, LLC*, No. K15A-05-002, 2016 WL 241864, at *10 (Del. Super. Ct. Jan. 12, 2016).

requiring a proposed rent increase based on market rent to also be directly related to costs within the community. The Superior Court read the Rent Justification Act as a whole, including the section giving landowners the unrestricted right to raise rent up to the rate of inflation. That passage supported the Superior Court's view that the requirement that the landowner show a direct relationship between the proposed increase and operation, maintenance, or improvement of the community before seeking a higher increase was not only not unreasonable, but important to accomplish the Act's stated interest in preventing "situations where a home owner is faced with an [']unreasonable['] or [']burdensome['] increase in rent even when there is no threat to a community owner's [']just, reasonable, and fair return on their investment.[']"[19] The Superior Court thus concluded that the Landowner failed to justify the proposed rent increase because it did not meet the requirement under § 7042(a)(2) of showing that the increase was "directly related to operating, maintaining or improving the manufactured home community."[20]

_____

[19] *Id*. at *8 (quoting 25 *Del C*. § 7040).
[20] *Id.* (quoting 25 *Del C*. § 7042(a)(2)).

## III. ANALYSIS

The two issues we address in this opinion involve our review of the Superior Court's interpretation of the Rent Justification Act. "We review issues of statutory construction and interpretation *de novo*."[21]

### A. The Superior Court Correctly Determined That The Act Required The Landowner to Show That The Increase Was Directly Related to Operating, Maintaining, or Improving The Community

The outcome-determinative issue over which the parties disagree involves the proper interpretation of § 7042, specifically the section requiring that "[t]he proposed rent increase is directly related to operating, maintaining or improving the manufactured home community, *and* justified by 1 or more factors listed under subsection (c) of this section."[22] The Landowner argues that the "and" in § 7042(a)(2) should be read as "or" because i) reading the "and" as "and" rather than "or" illogically reads the market rent factor out of the Act entirely and ii) otherwise the Act would not fulfill its stated purpose of striking a balance between the interests of homeowners and landowners. But, we agree with the

---

[21] *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011). "The goal of statutory construction is to determine and give effect to legislative intent." *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007) (internal quotation marks omitted) (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)). "The rules of statutory construction are well settled. First, we must determine whether the statute under consideration is ambiguous. It is ambiguous if it is susceptible of two reasonable interpretations. If it is unambiguous, then we give the words in the statute their plain meaning. If it is ambiguous, however, then we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious whole. We also ascribe a purpose to the General Assembly's use of statutory language, construing it against surplusage, if reasonably possible." 14 A.3d at 538 (citations omitted).
[22] 25 *Del. C.* § 7042(a)(2) (emphasis added).

9

Homeowners' Association and Superior Court, which embraced the Homeowners' Association's position that § 7042 requires all rent increases above CPI-U to be "directly related to operating, maintaining or improving the manufactured home community." Because the Landowner failed to provide evidence that the rent increases were directly related to those factors, we affirm the Superior Court's decision.

By its plain terms, § 7042 requires a landowner wishing to raise the rent above CPI-U to show both that "[t]he proposed rent increase is directly related to operating, maintaining or improving the manufactured home community, *and*," that the increase is "justified by 1 or more [of the 8] factors listed under subsection (c) of this section."[23] The Landowner admits that it made no actual effort to demonstrate that its rent increases were "directly related to operating, maintaining or improving the manufactured home community," but only produced evidence of market rents, which is one of the factors set forth in § 7042(c). The market rent factor appears seventh in § 7042(c)'s list of factors and is categorically distinct from the other factors in that it is not measured solely by tangible costs inside the community but rather by external "market forces." But, the language, purpose, and structure of the Rent Justification Act require more than just that factor for a landowner to raise rent above CPI-U.

---

[23] *Id*. (emphasis added).

The Rent Justification Act is effectively a rent control statute. Landowners are able to set whatever initial rent the market can bear when they attract new tenants. Homeowners are free to accept the rate, or they can choose a different community. But, mobile—manufactured—homes are not so mobile, and there can be material costs in moving one from one community to another, if the homes can be moved at all.[24] Because of this, the Rent Justification Act tries to protect homeowners from excessive rent increases that exploit the difficulties for homeowners of moving their mobile homes somewhere else. As the Rent Justification Act's Purpose section articulates, "manufactured home owners make substantial and sizeable investments in their manufactured homes. Once a manufactured home is situated on a manufactured housing community site, the difficulty and cost of moving the home gives the community owner disproportionate power in establishing rental rates."[25] The Act protects homeowners by preserving the initial relationship between themselves and the landowners, which presumably takes into account the landowners' costs and expected profits, unless the landowner's circumstances change in specific ways. To take into account ordinary inflation, the Act allows a

---

[24] Exhibit C to Opening Br. Amicus First State Manufactured Housing Ass'n at 63 (AARP PUBLIC POLICY INSTITUTE, MANUFACTURED HOUSING COMMUNITY TENANTS: SHIFTING THE BALANCE OF POWER (2004)) ("One of the defining characteristics of manufactured homes is that they are built on a permanent chassis attached to axles and wheels . . . . For this reason, manufactured homes are often called 'mobile homes,' but the term is misleading. In fact, these homes are seldom moved once placed . . . . There are several reasons for this . . . . Second, moving a home is a very expensive proposition and can easily cost $5,000 to $10,000.").
[25] 25 *Del. C.* § 7040.

landowner to raise rent by the average annual increase of CPI-U.[26]  To impose an increase beyond CPI-U, the landowner must prove more.  In particular, it must show that the increase is "directly related to operating, maintaining or improving the manufactured home community."[27]  That is, the landowner must show that its original expected return has declined, because the cost side of its ledger has grown. If a landowner can show that its costs have gone up, that opens the door to a rent increase based on § 7042(c)'s factors, including market rent.  If a landowner invests in its development, and therefore has "improve[ed]" the community, it can also reap the reward from that investment through higher-than-inflation rent increases.[28]  But, unless the landowner has seen its costs increase for "operating, maintaining or improving the manufactured home community,"[29] the Rent Justification Act preserves the initial relationship the landowner creates between its revenue and its costs.  The homeowner with her home semi-permanently planted in the community is protected from material increases in rent unrelated to the benefits and costs of living in the community, and the landowner receives the return it originally anticipated.  The Act's own Purpose section reflects this balance between protection for homeowners and landowners when it states that the Act seeks to "accommodate the conflicting interests of protecting manufactured home

---

[26] *Id.* § 7042(a).
[27] *Id.* § 7042(a)(2).
[28] *Id.*
[29] *Id.*

12

owners, residents and tenants from unreasonable and burdensome space rental increases while simultaneously providing for the need of manufactured home community owners to receive a just, reasonable and fair return on their property."[30]

The Landowner's argument that giving the "and" in § 7042 its obvious meaning renders the Rent Justification Act illogical is therefore without merit. Although "or" includes the meaning "and," that does not work in reverse, and thus the Landowner would have us read out of the Act a common word that is universally understood and when doing so creates no contradiction with other language in the Act. Although it is debatable whether it is ever a proper role for a court to take such a step,[31] it is recognized that doing so when giving effect to the legislature's chosen words does not yield an absurd result is improper.[32] When, as here, applying the Act as written renders a reasonable result consistent with the

---

[30] *Id*. § 7040.

[31] *In re Last Will and Testament of Palecki*, 920 A.2d 413, 423–25 (Del. Ch. 2007).

[32] *See Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 459–63 (2002) (noting that statutes are often delicately crafted in a process of legislative compromise and observing that the U.S. Supreme Court rarely uses absurd results as reasoning to "override unambiguous legislation," *id*. at 459); *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 470–71 (1989) (Kennedy, J., concurring) ("When used in a proper manner, this narrow exception to our normal rule of statutory construction does not intrude upon the lawmaking powers of Congress, but rather demonstrates a respect for the coequal Legislative Branch, which we assume would not act in an absurd way. This exception remains a legitimate tool of the Judiciary, however, only as long as the Court acts with self-discipline by limiting the exception to situations where the result of applying the plain language would be, in a genuine sense, absurd, i.e., where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone.").

Act's own stated purpose, doing so would be unjustifiable.[33] The Landowner, of course, may wish to have the ability to raise its homeowners' rents based solely on a market rent factor. But there is nothing illogical about the General Assembly's determination that if a landowner is to raise rates for homeowners above the rate of inflation, a landowner must show some increase in the costs on its income statement. This statutory requirement is a modest one, which only requires the landowner to produce evidence suggesting that the "return" on its "property" has declined.[34] Once that burden is met, the Rent Justification Act allows the landowner to argue for an increase using all the factors set forth in § 7042(c), including market rent. The Landowner here no doubt wishes that the Rent Justification Act did not exist at all. But, in giving effect to the plain meaning of the word "and," we reflect the importance that the General Assembly's chosen words rightly have in our approach to statutory interpretation.[35] The General

---

[33] *See Cordero v. Gulfstream Development Corp.*, 56 A.3d 1030, 1036–37 (Del. 2012) (refusing to apply absurdity doctrine because statute's plain language fit with purpose of statute even though facts of specific created an "unfortunate" result); *see also Home Ins. Co. v. Maldonado*, 515 A.2d 690, 693–94, 694 n.8 (Del. 1986) (describing this Court's prior refusal to invoke the absurdity doctrine when faced with a statute that, in this Court's judgment created an "illogical and unfair result," *id*. at 693, but was nonetheless "unambiguous," *id*. at 694).

[34] 25 *Del. C.* § 7040.

[35] See *Kelty v. State Farm Mut. Auto Ins. Co.*, 73 A.3d 926, 929 (Del. 2013) ("When interpreting a statute, we attempt to determine and give effect to the General Assembly's intent." (citations omitted)); *Clark v. State*, 65 A.3d 571, 578 (Del. 2013) ("We presume that the General Assembly intentionally chose particular language . . . ."); *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985) ("To apply a statute, the fundamental rule is to ascertain and give effect to the intent of the legislature. If the statute as a whole is unambiguous, there is no reasonable doubt as to the meaning of the words used and the Court's role is then limited to an application of the literal meaning of the words." (citations omitted)); *see also, e.g.*,

14

Assembly has determined that the Act should exist and that there should be protections for mobile-home owners against unlimited rent increases. Reading § 7042(a) as the Superior Court did faithfully respects the General Assembly's intent.

## B. The Act Does Not Require a Landowner to Prove Actual Rents

We resolve a second interpretive issue related to the Rent Justification Act today. Although the first issue was dispositive, this Court considers itself obliged to address a second issue, decided by the Superior Court, because the Superior Court's disposition of the issue, if adopted as precedent, would materially restrict arbitrators under the Rent Justification Act in the evidence they could hear in these cases in a manner that has the potential to raise material doubts about the constitutionality of the Rent Justification Act.[36] At arbitration, the Landowner presented three types of evidence to demonstrate that its rents were below prevailing market rent: the amount the Landowner was charging a new homeowner

---

*Ross v. Department of Correction*, 697 A.2d 377, 378 (Del. 1997) (giving effect to the plain meaning of a statute and observing that there was "no evidence that the General Assembly intended anything other than what the statute expressly provides"); *Balma v. Tidewater Oil Co.*, 214 A.2d 506, 562 (Del. 1965) ("Where its language is clear and unambiguous, a statute must be held to mean that which it plainly states, and no room is felt for construction.").

[36] Although "a court should avoid unnecessary decisions," 21 C.J.S. COURTS § 179, Westlaw (database updated Sept. 2016), this Court may "exercise discretion to express its opinion on a question not necessary to its decision," 5 C.J.S. APPEAL & ERROR § 1013, Westlaw (database updated Sept. 2016). *Cf. Sandt v. Delaware Solid Waste Authority*, 640 A.2d 1030, 1034 (Del. 1994) (deciding an issue without determining if it had been properly presented below because "(1) the issue is outcome-determinative and may have significant implications for future cases; and (2) our consideration of the issue will promote judicial economy").

15

entering the community;[37] advertised rents at comparable communities; and an expert report analyzing the comparables.[38] The Superior Court's decision held that proving market rent with reference to comparable communities required evidence of *actual* rents as charged to new residents and so the Landowner's evidence of comparable rents was insufficient.[39] The Superior Court based this interpretation on its view that the General Assembly narrowed the language of the Act in 2014 when it changed the language defining market rent from "relevant considerations include rents charged by comparable manufactured home communities in the applicant's competitive area" to "relevant considerations include rents charged to recent new home owners entering the subject manufactured home community and/or by comparable manufactured home communities."[40]

As the Landowner rightly notes, the Act does not provide the arbitrator or parties to the arbitration with the power to use compulsory process to obtain evidence from third parties. Without those tools, landowners and homeowners would be unable to compel third parties to provide actual contracts. Rather, the Act does provide certain arbitration rules, including that "[t]he Delaware Uniform Rules of Evidence shall be used as a guide by the arbitrator for admissibility of the

---

[37] Albeit based on only one completed sale and one pending sale in a two year period. App. Appellee's Answering Br. at B-14.
[38] *Id.*
[39] *Bon Ayre Cmty. Ass'n, Inc. v. Bon Ayre Land, LLC*, 2016 WL 241864, at *10 (Del. Super. Ct. Jan. 12, 2016).
[40] Appellant's Opening Br. at 20.

16

evidence submitted at the arbitration hearing."[41]  The Act also provides, among

other procedures, that "[u]nless waived by all parties, testimony will be under oath

or affirmation, administered by the arbitrator."[42]  Therefore, in proving what

market rent is, and in demonstrating relevant considerations bearing on the issue, a

landowner is able under the Act to introduce evidence relevant to that purpose,

with relevance having its ordinary meaning of "evidence having any tendency to

make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence."[43]

The Rent Justification Act does not limit what is relevant to showing market rent to

actual lease terms, nor do the Delaware Rules of Evidence.

At a minimum, the Superior Court's interpretation materially raises the

threshold for evidence necessary to prove one of § 7042(c)'s factors without a

basis in the text of the Act.  To the extent this judicially created standard makes it

essentially impossible for a landowner to prove the market rent factor, the Superior

Court's interpretation also raises constitutional due process concerns by subjecting

landowners to restrictions on their property rights without a fair way to prove a

relevant statutory factor that could ease the restriction.  Because this judicially

created evidentiary restriction is not only absent from the language of the Act itself

---

[41] 25 *Del. C.* § 7043(d).
[42] *Id*. § 7043(e)–(f).
[43] D.R.E. 401.

17

and unnecessary, but also renders the Rent Justification Act constitutionally problematic, we disagree with the Superior Court's interpretation.

Although the General Assembly did change the considerations for determining market rent provided in the Act, the change did not narrow the permissible types of evidence. First, the passage the Superior Court relies on in § 7042(c) provides examples of evidence, rather than an exclusive list. Saying that the change in language excludes certain evidence not directly mentioned in either definition is a step not required by the text of the Act and one we need not take. Second, the 2014 revision did not obviously make the evidentiary requirements more specific in the way the Superior Court suggests. If anything, the 2014 revision worked to highlight a type of rent that is relevant for demonstrating the current market level: rents in contemplation of arms-length transactions. Because new homeowners have not yet made the investment in a specific home and are therefore unencumbered by switching and investment costs that could distort the value of a given location, a fair way to prove the relevant statutory factor and thus to ease the statutory restriction is the rents they find attractive. But, even if the 2014 amendment *highlighted* the recent new homeowner example, it did so as just *one* example of market rent. The amendment does so by continuing to use "market rent" as the primary statutory term and using the example of "rents charged . . . by comparable manufactured home communities" as a "relevant consideration[]"

18

bearing on what the primary term "market rent" means.[44] The Act makes clear that "relevant considerations" "include" the example.[45] To include is not to exclude other possibly relevant considerations.

Also, as a practical matter, we are unsure of what evidentiary value actual rates charged have over advertised rates. The rates that are advertised should be attractive to the consumers searching for a lot and therefore typical of the relevant market rate: the rate a consumer is going to voluntarily pay when in a roughly equal bargaining position to the landowner. Thus, a requirement to prove actual rents would impose a great burden on bystanders without obvious benefit to the arbitration; without a more explicit legislative directive, we would be reluctant to require such a standard for evidence in arbitration proceedings held under the Act. Therefore, under the Rent Justification Act, landowners may use any evidence in keeping with the Act's provisions found in § 7043(d)–(g), including the Delaware Rules of Evidence, to prove their situation meets the justification.[46]

---

[44] 25 *Del. C.* § 7042(c)(7).
[45] *Id.*
[46] The Landowner makes a broad-based challenge to the constitutionality of the Rent Justification Act. Although traditional freedom of contract principles clearly do not favor the Rent Justification Act because it operates as a rent control statute, it has long been settled that rent control statutes do not necessarily violate any constitutional rights of a landowner. *See* ARDEN H. RATHKOPF ET AL., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 81:18, Westlaw (database updated Sept. 2016) ("Courts generally have rejected constitutional challenges to rent control laws on either impairment of contract, substantive due process, equal protection, or taking claims."). As the Superior Court properly found, the Act is not unconstitutionally vague and its terms are capable of being fairly enforced without violating the due process rights of landowners. *Bon Ayre Cmty. Ass'n, Inc. v. Bon Ayre Land, LLC*, No. K15A-05-002, 2016 WL 241864, at *10–*11 (Del. Super. Ct. Jan. 12, 2016). The Landowner's most forceful argument is

the one we have addressed above. Because the rules for arbitration set out in § 7043(c) do not afford parties to the arbitral process the ability to use compulsory process to gather evidence, the Superior Court's gloss on the Act requiring a landowner to prove market rent by use of actual rental rates available only in contracts between other landowners and their tenants would raise potential due process concerns, as a landowner might be unable to prove that a statutory factor justified its requested rent increase. Because we hold that the Act does not require the production of actual lease terms to support the proposition that market rents of comparable properties are higher than the landowner's proposed terms, the Landowner's argument is addressed. Under the Act as written, a landowner may prove market rent using any reliable evidence, including advertised rents. As the Landowner's own expert report illustrates, it is possible to do this without compulsory process by pointing to advertised rents and other reliable sources of market evidence that do not involve the actual leases between landowners of other properties and their tenants.

20

**Vaughn**, Justice, dissenting:

Of the four home owners affected by this appeal, three are paying a lot rent of $349 per month and one is paying a lot rent of $309 per month. The community owner sought an increase to $399 per month for the three home owners and $379 per month for the fourth. It submitted evidence of what it considered comparable rent paid by new home owners in four other manufactured home communities. It also submitted evidence that Bon Ayre had one sale and one pending sale for nine year leases at a reduced rate of $389 per month in 2015. The arbitrator concluded that one of the four comparables was not, in fact, comparable. The rent at the remaining three ranged from a high of $470 per month to a low of $438.65 per month. After averaging those rents, the arbitrator carefully made adjustments to take into account differences in the amenities among the three comparable communities and Bon Ayre. She then concluded that the fair market rent of the relevant lots in Bon Ayre was $386.37 per month. While the community association argues that the arbitrator's decision is not supported by substantial evidence because it is not based upon direct evidence of rents set forth in specific leases of individual new home owners, an argument rejected by the majority for the reasons stated in the majority opinion, it do not seem to offer any evidence that the fair market rental of the lots involved here is, in fact, less than $386.37.

1

Since it is undisputed that the community owner has not been found in violation of any statutory provision that persisted for more than 15 days during the twelve months preceding the proposal to increase the rent, the community owner had the burden of establishing that the proposed increase was "directly related to operating, maintaining, or improving the manufactured home community," and justified by market rent.[1] The Superior Court ruled that an increase in rent based on market rent can be justified only when the community owner can show that it has experienced an increase in the expenses of operating the community, apart from those expenses specifically recognized in the other subsections of 25 *Del. C.* § 7042(c), because only then can it be said that the proposed increase is directly related to operating, maintaining or improving the community.

I believe, however, that the community's expenses and the community owners' profit are both directly related to operating the community, one just as much as the other. I think that limiting the phrase "directly related to operating, maintaining or improving the manufactured home community"[2] to expenses, to the exclusion of profit, gives the phrase an unduly narrow reading. Here three of the rents are about 10% below what the arbitrator determined to be market rent and the fourth is more so. I think it can be said that the community owner's desire to bring the rents more in line with market rent is directly related to the operation of the

---

[1] 25 *Del. C.* § 7042(a)(2).
[2] *Id.*

community.  I see nothing in this record to suggest that the proposed rent increase is influenced by something else, something not related to the operation of the community.

The Superior Court was concerned in part that allowing an increase based on market rent without linking in expenses might lead to unreasonable or burdensome increases in rent.  One of the purposes of the statute is to protect the home owner from unreasonable and burdensome rent increases.[3]  An example given by the Superior Court is that a community owner might offer a lower rate to induce home owners to place their homes in the community, and later raise rental rates to the "market rate" with impunity.  However, I think the statute has adequate protection for the home owner.  As the Superior Court mentions, the statute provides that the § 7042(c) factors "may" justify an increase in rent greater than the increase of the CPI-U.[4]  Nothing in the statute seems to entitle a community owner to an increase in rent larger than the increase of the CPI-U.  Since market rent "may" justify an increase in rent, there can be cases where it may not.  While the statute provides that an arbitrator is to employ the standards set forth in § 7042,[5] I believe that the statute gives an arbitrator the discretion to apply them with a view toward satisfying the purposes of the statute.  In my view, an arbitrator can exercise

---

[3] *Id.* § 7040.
[4] *Id.* § 7042(c).
[5] *Id.* § 7043(c)(g).

3

discretion to deny a proposed increase to market rent if, in the particular circumstances of the case, doing so would be unreasonable or burdensome to the home owners. The arbitrator made no such finding in this case.

Another purpose of the statute is to provide "for the need of manufactured home community owners to receive a just, reasonable and fair return on their property."[6] We do not know from this record what a just, reasonable and fair return for a manufactured home community owner might be, but I think that where a lot's rent is ten per cent less than market rent, an inference is at least created that the community owner is not receiving a just, reasonable and fair return on that lot. There is no reason from the record here to believe that the expenses attributable to the four lots involved are less than the expenses attributable to the lot which the community owner rented to a new tenant for $399 in 2015.

Thus, the Superior Court construes the statute in such a way that the community owner's interest in receiving a fair return on the property is not considered under any of the § 7042(c) factors as a matter of law. The community owner's profit is capped to increases in rent for any twelve month period in an amount not greater than the applicable increase of the CPI-U, currently 1.6%, less any increase in expenses for that period. I do not believe that the language of the statute leads to this conclusion, and I am not at all certain that it is consistent with

---

[6] *Id.* § 7040.

4

the purpose of the statute that community owners receive a just, reasonable and fair return on their property. For these reasons, I would reverse the Superior Court and remand the case for further proceedings where the Superior Court would review the arbitrator's decision without limiting the market rent factor to a provable increase in expenses.