# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILD MEADOWS MHC, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No.:  K22A-05-002 RLG |
| | ) | |
| WILD MEADOWS | ) | |
| HOMEOWNERS ASSOCIATION, | ) | |
| INC., | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

**Submitted:  January 8, 2024**
**Decided:  April 2, 2024**

*Upon Appeal from a Final Decision and Order of the Arbitrator – AFFIRMED.*

Anthony V. Panicola, Esquire, Community Legal Aid Society, Inc., Dover, Delaware, *Attorney for Appellant.*

Robert J. Valihura, Esquire, Morton, Valihura & Zerbato, LLC, Greenville, Delaware, *Attorney for Appellee.*

**GREEN-STREETT, J.**

# I.    <u>Introduction</u>

The instant appeal stems from a dispute between the owner of a manufactured home community, Wild Meadows MHC, LLC (the "Landowner"), and an association representing the affected homeowners of that community, Wild Meadows Homeowners Association, Inc. (the "HOA"). Landowner sought an above-inflation rent increase under the Rent Justification Act,[1] the HOA objected on behalf of certain homeowners, and the parties proceeded to arbitration.

The Arbitrator issued his Arbitration Decision (the "Decision"), finding that Landowner met the statutory requirements of 25 <u>Del</u>. <u>C</u>. § 7052 to justify an above-inflation rent increase.[2] The Arbitrator then examined the proposed rent increase amount, and determined that Landowner sought a disproportionate amount of increased rent from the affected homeowners.[3] Accordingly, the Arbitrator denied a portion of Landowner's proposed above-inflation rent increase.[4] Landowner appealed to this Court, arguing that the Arbitrator exceeded the scope of his role

---

[1] 25 <u>Del</u>. <u>C</u>. § 7050 <u>et seq</u>.

[2] <u>See</u> <u>generally</u>, Decision, Apr. 18, 2022.

[3] <u>Id</u>. at 4.

[4] <u>Id</u>. at 4-5.

under 25 <u>Del</u>. <u>C</u>. § 7053.[5]  For the reasons set forth below, the Decision is **AFFIRMED**.

## II.    Factual and Procedural Background

### A.    The Community and Its Improvement

Wild Meadows is a housing community in Kent County, Delaware.[6]  The community contains 223 lots for rent by owners of manufactured homes.[7]  Landowner purchased the Wild Meadows community in October 2017.[8]

Landowner spent $14,794.00 to install light fixtures around the Wild Meadows community club house in July of 2020.[9]  Landowner, seeking to recoup its expenditure, sought an above CPI-U[10] rent increase for the year 2021.[11]  As required by 25 <u>Del</u>. <u>C</u>. § 7052, Landowner sent notice to the affected homeowners and held a formal meeting to discuss the proposed rent increase.[12]  Following that

---

[5] Appellant's Opening Br. at 2.

[6] <u>Id</u>. at 3.

[7] Appellee's Reply Br. at 1.

[8] <u>Id</u>.

[9] Decision at 2.

[10] The Consumer Price Index for All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area.

[11] Appellant's Opening Br. at 3-4.

[12] <u>Id</u>. at 4.

meeting, the HOA objected to the rent increase and filed for arbitration under 25 Del. C. § 7053.[13]   The parties proceeded to arbitration, which included extensive discovery and a two-day hearing.[14]

## B.    The Arbitration Decision

The Arbitrator issued his Decision on April 18, 2022.[15]   He found that Landowner's expenditure – the $14,794.00 – directly related to the operation, maintenance, or improvement of the manufactured home community.[16]   The Arbitrator further found that the expenditure constituted a capital improvement.[17] As neither party contended that Landowner violated any health or safety requirements, the Arbitrator concluded that "the initial terms and requirements of the Rent Justification Act were met."[18]   The Arbitrator determined that Landowner's expenditure did not lower its costs to offset the expenditure.[19] Thus, Landowner

---

[13] Id. at 5.

[14] Id. at 6.

[15] Decision at 1.

[16] Id. at 2.

[17] Id.

[18] Id.

[19] Id. at 3-4.

could "recoup its $14,794.00 through a rent increase above CPI-U, but no more."[20] This portion of the Decision has not been disputed by either party.

The Arbitrator continued his analysis by considering "which homeowners [bore] the brunt of the capital improvement cost."[21] He noted that, when Landowner notified the homeowners of the potential rent increase, Landowner offered an extended lease option to all homeowners.[22] Homeowners who accepted the extended lease "would be excluded from the rent increase for capital improvements."[23] 58 homeowners objected to the rent increase. Those 58 homeowners exercised their right to arbitration, represented by the HOA.[24] Landowner sought to recover its expenditure from a rent increase affecting solely those 58 homeowners.[25]

The Arbitrator deemed that proposal unfair to the 58 homeowners. He reasoned that a rent increase, stemming from a capital expenditure that benefitted all homeowners – but affected only the homeowners who declined to enter into an extended lease – violated "the spirit of the statute."[26] The Arbitrator posited that, if

---

[20] Id.

[21] Id. at 4.

[22] Id.

[23] Id.

[24] Id.

[25] Id.

[26] Id.

only one homeowner had objected, Landowner would "surely not" be authorized to pass the entire cost of the expenditure through to that single homeowner.[27] Thus, he concluded that the rent increase must be based on each homeowner's proportional share of the expenditure inclusive of all homeowners, not just the 58 that objected.[28]

Factoring in the homeowners who signed lease extensions, the Arbitrator noted the potentially problematic effect of the terms of the lease extensions. The Arbitrator found that the extended lease terms likely obviated those homeowners proportional responsibility for the expenditures.[29] Accordingly, he decided that Landowner could recoup only the portion of the expenditure attributable to the homeowners who did not extend their lease under the terms that insulated them from the rent increase.[30]

C.    **The Instant Appeal**

Landowner appeals that decision, arguing that the Arbitrator's determination that the expenditure be divided among all homeowners, not just the 58 objectors, constituted legal error.[31] Landowner asserts that the Arbitrator's analysis relied on

---

[27] Id.

[28] Id.

[29] Id.

[30] Id. at 4-5.

[31] Appellant's Opening Br. at 2.

6

"some inherent discretion found nowhere" in any statute.[32]  Further, Landowner contends that § 7053 required the Arbitrator to grant Landowner's proposed rent increase once Landowner demonstrated its compliance with § 7052.[33]

The HOA urges this Court to affirm the Decision, advancing the same logic employed by the Arbitrator.  The HOA cites <u>Rehoboth Bay Homeowners' Association v. Hometown Rehoboth Bay</u>[34] in support of its contention that the 58 affected homeowners can only be required to pay their proportionate share of the expenditure.[35]  The HOA further asserts that the Arbitrator's decision did not exercise any authority over the nonparties to the arbitration, but rather determined the parameters by which the rent increase should be calculated and implemented.[36]

## III.  <u>Standard of Review</u>

"When reviewing an arbitrator's decision, the Court must independently determine (1) whether the record created in the arbitration is sufficient justification for the arbitrator's decision, and (2) whether the arbitrator's decisions are free from

---

[32] <u>Id</u>. at 8.

[33] <u>Id</u>. at 12.

[34] 252 A.3d 434, 437 (Del. 2021).

[35] Appellee's Answering Br. at 8.

[36] <u>Id</u>. at 15.

legal error."[37] A "substantial evidence review is the appropriate standard of review for the arbitrator's factual findings."[38] The Court limits its review to a determination of whether the arbitrator's decision is supported by substantial evidence and free from legal error.[39] "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40] "Issues of statutory construction and interpretation are reviewed *de novo*."[41]

## III. Discussion

Unlike many of the prior cases arguing the application of § 7052, the parties do not dispute that Landowner successfully justified a rent increase. The sole issue before the Court in this appeal concerns the Arbitrator granting a rent increase for less than the amount proposed by Landowner. Rather than dividing the expenditure amount, $14,794.00, amongst the 58 affected homeowners, the Arbitrator determined the rent increase should be limited to each homeowner's proportionate

---

[37] Ridgewood Manor MHC, LLC v. Ridgewood Manor HOA, 2023 WL 4363899, at *3 (Del. Super. July 3, 2023) (citing 25 Del. C. § 7054).

[38] Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Ass'n, 210 A.3d 725, 731 n.37 (Del. 2019).

[39] Ridgewood, 2023 WL 4363899, at *3.

[40] Dec. Corp. v. Wild Meadows Home Owners Ass'n, 2016 WL 3866272, at *4 (Del. Super. July 12, 2016), abrogated by Rehoboth Bay Homeowners' Ass'n v. Hometown Rehoboth Bay, LLC, 252 A.3d 434 (Del. 2021).

[41] Ridgewood, 2023 WL 4363899, at *3, (citing Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n, 149 A.3d 227, 233 (Del. 2016).

amount of the expenditure.[42]  Although the Arbitrator noted there were 233 lots within the Wild Meadows community, he left it to the parties to calculate a rent increase consistent with his Decision.[43]

### A.    The rent increase must be proportionate

Delaware decisional law supports the Arbitrator's determination.  In Rehoboth Bay Homeowners' Association, the Delaware Supreme Court found that a rent increase justified by a capital improvement cannot exceed "that lot's full, proportionate share of those costs in those years."[44]  There, the community owner sought to continue a rent increase as part of the base rent amount for each affected lot for subsequent years.[45]  The Delaware Supreme Court, relying on its prior pronouncement in Bon Ayre Land, LLC, articulated "that the [Rent Justification] Act is effectively a rent control statute."[46]  It held that "[c]onstruing the Act to allow a community owner to recover the cost of a one-time capital improvement year-after-year, even after fully recovering that cost in year one, conflicts with the Act's stated

---

[42] Decision at 4.

[43] Id. at 5.

[44] 252 A.3d 434, 437 (Del. 2021).

[45] Id. at 442-43.

[46] Id. at 443 (internal quotations omitted) (citing Bon Ayre Land, LLC, 149 A.3d at 234).

purpose and with our reasoning in Bon Ayre."[47] That holding crystalized the concept that the Rent Justification Act intends to prevent rent increases that "become [ ] unrelated to the benefits and costs of living in the community."[48]

In the instant case, Landowner seeks to burden the 58 affected homeowners with the entirety of its expenditure, despite that expenditure presumably benefitting every homeowner within Wild Meadows. Allowing that narrow interpretation would run contrary to the intention of the Rent Justification Act, as well as the Delaware Supreme Court cases that interpret it. As the Arbitrator correctly pointed out, such a ruling would permit a community owner to subject the objecting homeowners to a disproportionate rent increase.[49] Apportioned amongst a large number of homeowners that increase may not appear problematic. The fewer homeowners that object, however, the more punitive that rent increase becomes. In effect, this interpretation would allow the community owner to coerce homeowners into unfavorable lease extensions to avoid risking disproportionate rent increases. That type of negotiation imbalance belies the spirit of the Rent Justification Act.

Landowner argues that the Arbitrator impermissibly exercised authority over the "other 165 homeowners who [were] not parties to this action" by requiring the

---

[47] Id. at 444.

[48] Id.

[49] Decision at 4.

cost of the expenditure be divided proportionally across every lot.[50] The Arbitrator, however, specifically noted that those homeowners who entered into long-term leases with Landowner were likely exempt from the rent increase contemplated by the Decision.[51] The Arbitrator did not require Landowner to raise the rent of the non-party homeowners. He simply determined that Landowner could not force the 58 objecting homeowners to pay the entirety of an expenditure that benefitted the entire community.[52]

**B.** **The Arbitrator did not commit legal error by lowering the rent increase**

Landowner further contends that the Arbitrator did not have the authority to alter the proposed rent increase once he determined Landowner complied with the requirements of § 7052.[53] As the Arbitrator found that Landowner could "recoup its $14,794.00 through a rent increase,"[54] Landowner posits that the rent increase it proposed had to be accepted because § 7053 does not expressly authorize the

---

[50] Appellant's Opening Br. at 2.

[51] Decision at 4.

[52] Id.

[53] Appellant's Opening Br. at 11.

[54] Decision at 4.

11

Arbitrator to decrease the amount of the proposed rent increase.[55]  Again, Delaware decisional law supports the Arbitrator's decision.

In Shady Park Homeowners' Association, Inc. v. Shady Park MHC, LLC, the arbitrator found an above-inflation rent increase justified.[56]  The Shady Park arbitrator found that fairness required an adjustment to the proposed rent increase.[57] The solution employed by the arbitrator involved setting a schedule of rent increases, allowing the community owner to reach market rent over time.[58]  This Court upheld that solution, finding substantial evidence existed to support the arbitrator's finding that "it was necessary to adjust the rental increase [to which] the Owner was entitled to ensure the balancing of unequal bargaining power."[59]

Here, the Arbitrator found that Landowner could raise rent above inflation to recoup its capital expenditure.  The Arbitrator then required that increase to be proportional, instead of only 58 homeowners "[bearing] the brunt of that capital

---

[55] Appellant's Opening Br. at 12 ("The Court can reject this argument out of hand because [Landowner] fully complied with the Act's requirements to entitle it to an above-inflation rent increase in the amount it sought.").

[56] 2023 WL 2366643, at *7 (Del. Super. Mar. 3, 2023), aff'd, 308 A.3d 168 (Del. 2023).

[57] Id.

[58] Id.

[59] Id.

improvement cost."[60]  The Court finds that adjustment supported by substantial evidence and necessary "to ensure the balancing of unequal bargaining power."[61].

## C.  The Arbitrator did not impose an unauthorized obligation on Landowner

Landowner's final argument, derived from Sandhill Acres, asserts that "neither an arbitrator nor this Court may impose a requirement on the community owner that the statute does not contain."[62]  Landowner contends that the Court cannot require Landowner to apply the rent increase to all owners because that "obligation is not contained in the act."[63]  In Sandhill Acres, the Delaware Supreme Court found that this Court could not impose an obligation on a community owner not enumerated by the statute.[64]

This Court, in affirming the Arbitrator's Decision, does not require Landowner to further justify its entitlement to a rent increase nor does it impose any further obligation on Landowner.  Rather, the Arbitrator's decision – and this Court's affirmation – limit the proportional impact of the Landowner's rent increase on the

---

[60] Decision at 4.

[61] Shady Park Homeowners' Ass'n, 2023 WL 2366643, at *7.

[62] Appellant's Reply Br. at 7-8 (internal quotations omitted) (citing Sandhill Acres, 210 A.3d at 729).

[63] Id. at 8.

[64] Sandhill Acres, 210 A.3d at 729.

58 objecting homeowners. "The justification process outlined by the act – and clarified by the Delaware Supreme Court – was intended to be moderate, equitable, and balanced."[65] The Rent Justification Act does not permit community owners to force homeowners objecting to a rent increase to pay more than their proportionate share of a capital expenditure.[66] As no additional requirement has been improperly placed on Landowner, its argument based on Sandhill Acres fails.

## IV. Conclusion

The Arbitrator's Decision correctly followed the legal framework outlined by the Rent Justification Act, as well as the cases that interpret that act. He determined that each homeowner's rent increase be proportionate to her portion of Landowner's capital expenditure. That decision stands free of legal error, and is supported by substantial evidence. Accordingly, the Arbitrator's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

---

[65] Ridgewood Manor MHC, LLC, 2023 WL 4363899, at *4.

[66] See generally 25 Del. C. § 7050 et seq.

14