# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILD MEADOWS MHC, LLC,   )
              )
     Appellant,  )
              )
    v.       )   C.A. No.:  K22A-04-001 RLG
              )
WILD MEADOWS     )
HOMEOWNERS ASSOCIATION, )
INC.,           )
              )
     Appellee.  )

## MEMORANDUM OPINION AND ORDER

**Submitted:  January 8, 2024**
**Decided:  May 2, 2024[1]**

*Upon Appeal from a Final Decision and Order of the Arbitrator*
*REVERSED AND REMANDED.*

Anthony V. Panicola, Esquire and Olga Beskrone, Esquire, Community Legal Aid Society, Inc., Dover, Delaware, *Attorneys for Appellant.*

Robert J. Valihura, Esquire, Morton, Valihura & Zerbato, LLC, Greenville, Delaware, *Attorney for Appellee.*

**GREEN-STREETT, J.**

---

[1] The transcript from oral argument in this matter was not received until March 13, 2024.

## I.  Introduction

This appeal concerns a dispute between the owner of a manufactured home community, Wild Meadows MHC, LLC, (the "Landowner") and the homeowners association representing the homeowners in that community, Wild Meadows Homeowners Association (the "HOA").  Landowner sought a rent increase above the average annual increase in the Consumer Price Index for All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area ("CPI-U").[2]  The HOA opposed, and the parties proceeded to arbitration.[3]  The Arbitrator found Landowner was not entitled to a rent increase above CPI-U[4] under the Delaware Manufactured Homeowners and Community Owners Act (the "Rent Justification Act," or the "Act").[5]  Landowner appeals that Decision.[6]

While navigating the framework provided by 25 Del. C. § 7052, the Arbitrator determined Landowner satisfied its *prima facie* case requirements by demonstrating the requisite "directly related" condition to justify a rent increase.[7]  The Arbitrator

---

[2] Appellant's Opening Br. at 1.

[3] Id.

[4] See generally Decision of the Arbitrator, March 9, 2022 (the "Decision").

[5] See 25 Del. C. § 7050 et seq.

[6] Appellant's Opening Br. at 1.

[7] Id. at 2; see also Decision at 10.

found that Landowner's expenditure directly related to a "cost increase for operating, maintaining[,] or improving the manufactured home community."[8] The Arbitrator went on to reason, however, that, because Landowner's total costs had decreased year-over-year, Landowner could not justify a rent increase above CPI-U.[9] Landowner appealed to this Court, contending that the Arbitrator's finding constituted legal error.[10] This Court agrees. For the reasons set forth below, the decision of the Arbitrator is **REVERSED AND REMANDED** for further findings consistent with this opinion.

## II.    **Factual and Procedural Background**

In 2019, Landowner incurred a capital expense of $17,200.00 (the "Expenditure") to replace carpet in several common areas throughout the Wild Meadows manufactured home community.[11] Landowner then sought an above-inflation rent increase for the community, with that increase to take effect in 2020.[12] Landowner sought this increase to help offset "two full years of documented

---

[8] Decision at 9.

[9] Id. at 10-11.

[10] Appellant's Opening Br. at 2.

[11] Decision at 5.

[12] Id. at 1.

financial losses."[13]    Seeking to comply with the requirements of the Act,[14] Landowner sent written notice of its proposed rent increase to the affected homeowners on October 28, 2019.[15]  Landowner held a meeting with the affected homeowners on November 19, 2019, and disclosed all "material factors resulting in the decision to increase the rent."[16]  After that meeting, the HOA objected to the rent increase and petitioned for arbitration as outlined by 25 Del. C. § 7053(c).[17]

The parties proceeded to arbitration, and the Arbitrator issued his Decision on March 9, 2022.[18]  First, the Arbitrator outlined the relevant statutory framework with which a community owner must comply to justify an above-inflation rent increase under 25 Del. C. § 7052(a)(1) and § 7052(a)(2).[19]  The Arbitrator found Landowner complied with § 7052(a)(1), as the parties did not raise any arguments concerning health or safety violations.[20]

_____

[13] Id.

[14] 25 Del. C. § 7050 et seq.

[15] Appellant's Opening Br. at 7.

[16] Id. at 7-8.

[17] Id. at 9.

[18] Arbitrator's Decision at 1.

[19] Id. at 6; see also 25 Del. C. § 7052 (this section of the code has been modified since the events pertinent to this case.  All sections referenced are as they were written before July 1, 2022).

[20] Arbitrator's Decision at 6.

4

The Arbitrator next turned to § 7052 (a)(2), which required that Landowner show "the proposed rent increase is directly related to operating, maintaining, or improving the manufactured home community, and justified by [one] or more factors listed under subsection (c) of this section."[21] Landowner presented evidence of improvements to common areas within the community, totaling $17,200.00.[22] Those improvements and corresponding expenses – the Expenditure – were not disputed by the HOA.[23] The Arbitrator found "[the] Community Owner [ ] presented a *prima facie* case by providing evidence that the carpet replacement was a cost increase for operating, maintaining[,] or improving the manufactured home community…."[24]

The Arbitrator then considered the HOA's rebuttal argument "that the [E]xpenditure did not reflect any increase in costs."[25] Landowner's financial records indicated the total community operating expenses decreased from 2018 to 2019.[26] The Arbitrator subsequently found the decrease in Landowner's total operating costs mitigated any effect the Expenditure had on Landowner's expected rate of return.[27]

---

[21] 25 Del. C. § 7052 (a)(2).

[22] Arbitrator's Decision at 6.

[23] Id.

[24] Id. at 9.

[25] Id.

[26] Id. at 9-10.

[27] Id. at 10.

Because Landowner's total costs had not increased, the Arbitrator found "a rent increase directly related to increased costs [could not] be justified,"[28] despite evidence that Landowner continued to operate at a loss.[29]  Accordingly, the Arbitrator denied the above-inflation rent increase without reaching the second prong of § 7052 (a)(2).[30]

Landowner appealed, and this Court held oral argument on the matter on September 22, 2023.  Following oral argument, the parties requested an opportunity to submit letters to the Court to further clarify their arguments.  Landowner submitted its supplemental letter to the Court on October 6, 2023.[31]  The HOA filed its reply letter on October 16, 2023.[32]  Landowner filed an additional letter on November 3, 2023 discussing the Delaware Supreme Court's decision in Shady Park Homeowner's Ass'n, Inc. v. Shady Park MHC, LLC.[33]  The Court convened an office conference on January 8, 2024 to finalize the parties' positions relating to the holding in Shady Park.[34]

---

[28] Id.

[29] Id. at 8.

[30] Id. at 11.

[31] D.I. 27.

[32] D.I. 30.

[33] 308 A.3d 168 (Del. 2023).

[34] D.I. 33.

6

### III. Parties' Contentions

Landowner appeals the Arbitrator's decision, arguing that, once the Arbitrator found Landowner established a *prima facie* case that the Expenditure directly related to operating expenses, the Arbitrator should have proceeded to the second prong of § 7052(a)(2).[35]  Instead, the Arbitrator engaged in an additional layer of financial analysis.  Landowner contends the Arbitrator erred by considering that Landowner's total expenses decreased year-over-year, without considering that it still experienced a financial loss.[36]  Landowner further asserts the Arbitrator's Decision creates "an environment that will undermine the very existence of this housing option."[37]

The HOA's argument centers on the Delaware Supreme Court's decision in Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Association.[38]  Specifically, the HOA posits that Sandhill Acres held that homeowners could rebut a community owner's *prima facie* case by showing an expenditure did not lead to an increase in overall costs.[39]  Relying on that holding, the HOA contends that, as

---

[35] Appellant's Opening Br. at 15-16.

[36] Id. at 16.

[37] Id. at 30.

[38] 210 A.3d 725, 729 (Del. 2019).

[39] Appellant's Reply Br. at 14-15.

Landowner's total costs decreased, that decrease offset any cost of the Expenditure.[40] The HOA argues the Expenditure could not have increased Landowner's costs if Landowner's total costs diminished.[41] Accordingly, the HOA urges this Court to affirm the Arbitrator's Decision.

## IV.    **Standard of Review**

Upon review of an arbitrator's decision, this Court determines (1) if the record created sufficiently justifies the decision, and (2) if the decision is free from legal error.[42] A "substantial evidence review is the appropriate standard of review for the arbitrator's factual findings."[43] "Substantial evidence means evidence that is relevant and that a reasonable mind might accept as adequate to support a conclusion."[44] "Issues of statutory construction and interpretation are reviewed *de novo*."[45]

---

[40] Id.

[41] Id.

[42] 25 Del. C. § 7054.

[43] Sandhill Acres, 210 A.3d at 731 n.37.

[44] Ridgewood Manor MHC, LLC v. Ridgewood Manor HOA, 2023 WL 4363899, at *3 (Del. Super. July 3, 2023) (citing December Corp v. Wild Meadows HOA, 2016 WL 3866272 at *4 (Del. Super. July 12, 2016).

[45] Id. (citing Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n, 149 A.3d 227, 233 (Del. 2016)).

## V.    **Discussion**

The parties do not dispute that Landowner may increase rent by the average annual increase established by the CPI-U. To raise rent above the CPI-U, a community owner must satisfy the conditions outlined in § 7052.[46] An arbitrator must engage in a methodical march through the analytical framework provided by § 7052.

### A. **The Analytical Framework**

First, an arbitrator must determine if the community owner complied with § 7052(a)(1) by avoiding any health or safety violation in the preceding 12-month period.[47] Next, the community owner must make a *prima facie* case that the proposed rent increase directly related to "operating, maintaining, or improving the manufactured home community."[48] The homeowners may present evidence to rebut that *prima facie* case by showing that any capital expenditure did not cause an increase in the community owner's costs.[49] Once an arbitrator concludes the

---

[46] Ridgewood Manor 2023 WL 4363899, at *4.

[47] 25 Del. C. § 7052(a)(1).

[48] 25 Del. C. § 7052(a)(2).

[49] Sandhill Acres, 210 A.3d 729.

community owner satisfied both prongs of §7052(a), the arbitrator must proceed to an analysis of the § 7052(c) factors.[50]

The parties do not dispute Landowner complied with § 7052(a)(1), as neither party presented evidence of any health or safety violations.[51] Further, the parties do not dispute Landowner paid $17,200.00 to replace carpet in "multiple areas of the common facilities."[52] The sole disagreement between the parties arises from the Arbitrator's conclusion that the HOA successfully rebutted Landowner's *prima facie* case. The Arbitrator found that, because Landowner's year-over-year costs decreased, Landowner could not show that the Expenditure directly related to increased costs.[53]

### B.    Landowner satisfied the directly related requirement, regardless of its decreasing year-over-year costs

The "directly related" requirement of the Rent Justification Act requires Landowner to "offer evidence that, in making some capital improvement, Landowner has incurred costs that are likely to reduce its expected return."[54] The

---

[50] Ridgewood Manor, 2023 WL 4363899, at *5.

[51] Decision at 6.

[52] Id.

[53] Id. at 10.

[54] Ridgewood Manor, 2023 WL 4363899, at *4 (internal quotations omitted) (quoting Sandhill Acres, 210 A.3d at 729).

Arbitrator determined Landowner demonstrated that it made a capital improvement – the Expenditure. The Arbitrator further determined that Landowner established a *prima facie* case that the Expenditure satisfied the "directly related" requirement.[55] Once the Arbitrator found Landowner met that standard, the HOA became entitled to rebut that showing.[56]

The HOA's rebuttal relies on its misreading of the Delaware Supreme Court's holding in Sandhill Acres. In Sandhill, the community owner purchased a new water filtration system and used that purchase as the justification for the "directly related" requirement of § 7052.[57] An arbitrator granted the rent increase, but this Court reversed because it found that the community owner had not established "that because of [that] expenditure its original expected return [had] declined."[58] This Court found that the "directly related" requirement forced the community owner to show "both that its overall costs [were] higher than they previously were[,] and that its original expected return had declined."[59]

---

[55] Decision at 9.

[56] Sandhill Acres, 210 A.3d at 729.

[57] Id.

[58] Id. at 728 (internal quotations omitted).

[59] Id.

The Delaware Supreme Court reversed, finding the "directly related" element did not require the community owner to show an overall decrease.[60] It, instead, characterized the landowner's required showing as a "modest" one.[61] The Delaware Supreme Court went on to note that, if homeowners could show "the expenditure was offset by reduced expenses in other areas," the capital expenditure in question might not reflect any increase in costs.[62] The Arbitrator here interpreted that language to mean that, if Landowner's total costs decreased, the Expenditure could not directly relate to increased costs.[63]

That interpretation, however, misses the mark. To establish a *prima facie* case satisfying the directly related requirement, Landowner needed to present evidence that, in making some capital improvement, it incurred costs that are likely to reduce its expected return.[64] Landowner satisfied this requirement by demonstrating that the Expenditure constituted a capital improvement that resulted in a dollar-for-dollar cost increase. The fact that Landowner lowered its total costs by decreasing its

---

[60] Id. at 729.

[61] Id. (internal quotations omitted) (quoting Bon Ayre, 149 A.3d at 235-36.)

[62] Id.

[63] Decision at 8.

[64] Sandhill Acres, 210 A.3d at 729.

spending elsewhere fails to show that the Expenditure did not contribute to an increase in costs.

Offsetting expenses, as described in Sandhill Acres, refers to lowered expenses resulting from an expenditure, not merely an overall reduction in costs. A decrease in a community owner's total costs does not foreclose it from seeking a rent increase when it makes a capital investment that does not contribute to those lowered costs.[65] If the capital investment directly lowered costs, those lowered costs would offset the expense of the initial investment by the community owner. For example, if an investment directly led to lower recurring maintenance costs, those lowered maintenance costs would offset the investment expense. In such a scenario, the capital investment would not increase operating costs, and, therefore, would not satisfy the "directly related" requirement.

That analysis must occur independent of the total costs of the community owner, as analyzing the overall costs imposes "a requirement on the community owner that the statute does not contain."[66] The Expenditure led to an increase in Landowner's costs of $17,200.00. The analysis of the Arbitrator should have focused on whether the Expenditure directly lowered costs to offset Landowner's

---

[65] Id.

[66] Id.

capital investment, not whether Landowner lowered its total costs independent of the Expenditure. As the HOA did not present any evidence suggesting that the Expenditure itself led to a decrease in costs for Landowner, the Arbitrator erred by finding that Landowner's costs did not increase because of the Expenditure.

## C. Whether Landowner's losses consist mostly of "paper losses" does not factor into the Court's analysis

In their supplemental letters to the Court, both parties also raised arguments relating to whether Landowner actually incurred a financial loss in the relevant years.[67] The HOA characterizes Landowner's losses as "illusory" because they are driven primarily by depreciation and amortization.[68] The HOA asserts these losses are not relevant to the analysis of a rent increase under the Act, and, therefore, Landowner's business should be considered profitable for any analysis of a potential rent increase.[69]

The record demonstrates the Arbitrator did not give much consideration or weight to the HOA's contention that Landowner's losses were "paper losses." Instead, he focused on Landowner's operating expenses to determine if the

---

[67] See Appellant's Letter to the Court, D.I. 27 (Oct. 6, 2023); see also Appellee's Letter to the Court, D.I. 31 (Nov. 3, 2023).

[68] Appellee's Letter to the Court, D.I. 31 (Nov. 3, 2023).

[69] Id. at 2.

14

Expenditure increased those expenses.[70]  Although the Court finds the Arbitrator's reliance on Landowner's total expenses to be misplaced, the Court agrees that whether Landowner's financial statements reflect "paper losses" does not factor into the analytical framework provided by the Act.  Focusing on accounting principles, and their application, confuses the issue.  No language within the Act, or any of the relevant case law, suggests that a profitable community owner would be barred from a rent increase provided it complied with the requirements of § 7052.  Therefore, the Court's analysis requires no determination of whether Landowner's losses were "paper losses" or something more tangible.

## VI.  Conclusion

The crux of this appeal turns on the Arbitrator's finding that the HOA successfully rebutted Landowner's *prima facie* case by demonstrating that Landowner's total costs decreased.  That finding placed an additional burden on Landowner to make a financial showing not imposed by the Act.  Because the Arbitrator performed an analysis inconsistent with the requirements of the Act, his analysis on this point constituted legal error.  Accordingly, the Arbitrator's decision must be **REVERSED and REMANDED** for a determination of whether

---

[70] Decision at 9.

Landowner meets the requirements for a rent increase based upon § 7052(c)(7), market rent.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge