# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHADY PARK HOMEOWNERS' ASSOCIATION, INC., | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | C.A. No: S21A-11-001 MHC |
| SHADY PARK MHC, LLC | ) ) | |
| and | ) ) | |
| DELAWARE MANUFACTURED HOME RELOCATION AUTHORITY (DMHRA), | ) ) ) ) | |
| Appellees. | ) ) ) | |

## MEMORANDUM OPINION

Submitted: December 1, 2022
Decided: March 3, 2023

*Upon Appeal from the Decision of the Arbitrator,*
**AFFIRMED.**

Olga K. Beskrone, Esquire, Community Legal Aid Society, Inc., Wilmington, Delaware. *Attorney for Appellant.*

David C. Zerbato, Esquire, Robert J. Valihura, Esquire, Morton, Valihura, & Zerbato, LLC, Greenville, Delaware *Attorneys for Appellees.*

**CONNER, J.**

## Introduction

Before the Court is Shady Park Homeowners' Association's ("Appellant" or "HOA") appeal from the decision of the Arbitrator. For the reasons that follow, the Court affirms the Arbitrator's decision.

## Factual and Procedural History

The HOA is composed of homeowners in Shady Park, a manufactured housing community owned by Shady Park MHC, LLC ("Appellee" or "Owner"). The Owner increased the rent for the 2021 rental year for costs incurred in 2020 relating to capital improvements in the community. A final meeting was held discussing the justifications for the rent increase as required by 25 *Del. C.* § 7053(a)(2).

The HOA opposed the rent increase and sought arbitration as allowed by the statute.[1] After extensive arbitration proceedings were conducted, the Arbitrator prepared a detailed report containing his findings and analysis of the applicable law.[2] The Arbitrator determined that the Owner met all the requirements for an above CPI-U[3] rental increase under the Rent Justification Act[4] but altered the increased rent

---

[1] 25 *Del. C.* § 7053(f).

[2] *See generally*, Arbitrator's Decision dated October 6, 2021.

[3] "CPI-U means the average annual increase of the Consumer Price Index For All Urban Customers in the Philadelphia-Wilmington-Atlantic City area for the most recently available preceding thirty-six (36) month period at the time the notice of a rent increase is mailed to the leaseholders." 1 *Del. Admin. C.* § 202-2.0.

[4] The statutes have since been revised. However, at the time of the Arbitrator's decision old versions of the statutes were in place. The Court will be referencing old sections from Title 25 of the Delaware Code that were effective until June 30, 2022. 25 *Del. C.* § 7052 *et seq.*

amount due to balancing concerns under the Act and relevant case law.[5] Following the Arbitrator's decision, the HOA appealed to this Court.[6]

## Parties' Contentions

The HOA presents multiple arguments as to why the Arbitrator's decision should be reversed. First, the HOA argues that the Arbitrator erred as a matter of law in concluding the rent increase is directly related to operating, maintaining or improving the manufactured home community. Next, the HOA argues that the Arbitrator erred as a matter of law in finding that the Owner established the market rent for the community. Thirdly, the HOA argues that the Arbitrator erred as a matter of law in refusing to deny the rent increase because of the Owner's failure to fully comply with the notice requirements in the statute and code. Lastly, the HOA argues that the Arbitrator erred in concluding that he did not possess the authority under the act to decide any dispositive issues prior to the arbitration hearing.

The Owner contends that the Arbitrator did not err and that the record is sufficient justification for his decisions.

---

[5] Arbitrator's Decision at 28.
[6] Section 7054 allows the affected homeowners to appeal the decision of the Arbitrator to the Superior Court in the county of the affected community. 25 *Del. C.* § 7054.

## Standard of Review

Pursuant to 25 *Del. C.* § 7054, "[t]he appeal shall be on the record and the Court shall address written and/or oral arguments of the parties as to whether the record created in the arbitration is sufficient justification for the arbitrator's decisions and whether those decisions are free from legal error."[7]

There has been some debate over the appropriate standard of review in regard to the Rent Justification Act.[8] The Delaware Supreme Court addressed the debate concluding that "substantial evidence review is the appropriate standard of review for the arbitrator's factual findings."[9] When employing this standard, the Court asks "whether there is substantial evidence in the record to support the [arbitrator's] findings and whether such findings are free from legal error."[10] Substantial evidence means evidence that is relevant and that a reasonable mind might accept as adequate to support a conclusion.[11]

---

[7] 25 *Del. C.* § 7054.

[8] *See generally December Corp v. Wild Meadows HOA,* 2016 WL 3866272 (Del. Super. July 12, 2016).

[9] *Rehoboth Bay Homeowners' Assn. v. Hometown Rehoboth Bay, LLC*, 252 A.3d 434, 441 (Del. 2021)(quoting *Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Assoc.,* 210 A.3d 725, 731, n.37 (Del. 2019)).

[10] *Rehoboth Bay Homeowners' Assn.*, 252 A.3d at 441 (quoting *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015)).

[11] *December Corp*, 2016 WL 3866272 at *4.

**Discussion**

As a threshold matter, the Court will first address the Arbitrator's authority to decide dispositive issues prior to the arbitration hearings and the notice requirements issues raised by the HOA. The Court will then address the crux of the appeal, the market rent and directly related standard issues.

I.      The Arbitrator was Correct in Concluding He Did Not Possess the Authority to Decide Dispositive Issues Prior to the Arbitration Hearing

In February of 2021, the HOA made a motion before the Arbitrator that resembled a motion for summary judgment in the general litigation process. Although 1 *Del. Admin. C.* § 202-7.10 authorizes the Arbitrator to schedule an informal preliminary conference to "narrow the issues and minimize the expense of the arbitration process" the Arbitrator determined that he did not have the authority to narrow the issues via the quasi motion for summary judgment.[12] The HOA argues that the Arbitrator possessed the authority to rule on the dispositive issue which sought denial of the rent increase before the arbitration hearing. Therefore, the HOA contends this Court should reverse the Arbitrator's decision.[13]

The Arbitrator addressed the issue as a preliminary matter in his decision. The Arbitrator based his decision for not ruling on the dispositive motion from specific language of the Delaware Administrative Code. The code clearly states "[t]he

---

[12] Arbitrator's Decision at 3.
[13] Appellant's Opening Br. at 27-28.

4

decision of the arbitrator shall be based solely on the evidence presented at the hearing and based on the standards set forth in 1 *Del. C.* § 7042"[14] (now § 7052). The Arbitrator explained that some processes available during general litigation would "bypass the very mechanism the Act contemplates (the Arbitration), leaving the parties without record for appeal."[15]

If the Arbitrator would have ruled in favor of the HOA on the dispositive motion, the arbitration hearing would not have taken place, therefore rendering the dispute resolution process meaningless. The Code allows for *informal* meetings prior to the arbitration hearing to narrow issues for expense minimizing purposes. It does not appear to the Court that the purpose of those informal meetings would be to rule on merits of the case. Accordingly, the Arbitrator was correct in concluding he did not have the authority to rule on the dispositive issue before the arbitration hearing commenced.

II.    The Arbitrator was Correct in Refusing to Deny the Rent Increase Based Upon Non-Compliance with Notice Requirements

The HOA next argues that the Arbitrator erred in awarding the rent increase despite the Owner's failure to comply with notice requirements in the Rent Justification Act.[16] Pursuant to 25 *Del. C.* § 7053(a)(1), "[a] community owner shall give written notice to each affected homeowner and to the homeowners' association,

---

[14] 1 *Del. Admin. C.* § 202-7.21.
[15] Arbitrator's Decision at 3.
[16] Appellant's Opening Br. at 23.

if one exists, and to the Delaware Manufactured Home Relocation Authority ("Authority") at least 90 days prior to any increase in rent."[17] Additionally, 1 *Del. Admin. C.* § 202-4.1 speaks to the notice requirement. The code states, "[a] community owner is required to give written notice to each affected homeowner, to the Home Owners Association, if one exists, and to the Authority, at least 90 days prior to any increase in lot rent."[18] It is important to note that there is no challenge to the affected homeowners' notice under 25 *Del. C.* § 7053(a)(1) or to the certification of notice to the Delaware Manufactured Home Relocation Authority.[19]

The HOA supports its argument by stating the affected homeowners may represent themselves or be represented by an established homeowners' association, therefore, proving the notice requirement to the HOA to be important.[20] The HOA also relies upon the case of *Tunnell Companies, L.P. v. Greenawalt* where the notice requirements were not met and the Superior Court denied the rent increase because of the failure to meet the notice requirements.[21]

The circumstances in *Tunnell Companies, L.P.* differ from those at hand. In *Tunnell Companies, L.P.*, Tunnell only provided a map of the affected lots accompanied by each lots' proposed increase in rent.[22] Tunnell did not provide the

---

[17] 25 *Del. C.* § 7053(a)(1).
[18] 1 *Del. Admin. C.* § 202-4.1.
[19] Arbitrator's Decision at 14.
[20] *Id.* at 15.
[21] *Tunnel Companies, L.P. v. Greenawalt*, 2014 WL 5173037 (Del. Super. Oct. 14, 2014).
[22] *Id.* at *5.

Market Rent reports, the information contained in the reports, or the final analyses.[23]

Since Tunnell stated it relied on the information contained in the Market Rent reports to justify the rental increase, the Court found the reports to be a material factor.[24] The Court, in relying on 25 *Del. C.* § 7043(b) (now 7053(c)), determined that Tunnell failed to justify the increase in rent since it did not provide the Market Rent Reports, a material factor resulting in its decision to increase the rent.[25] The Court opined that Tunnell attempted to increase the rent with minimal resistance by keeping the HOA and homeowners in the dark.[26]

In the case at hand, the Owner complied with the requirements of holding a final meeting with the community. At that final meeting an extensive PowerPoint presentation was displayed explaining the material factors used in the decision for the rent increase above the CPI-U level, including the Market Rent Analysis report. Furthermore, here the HOA is stating the Arbitrator erred for not denying the rent increase due to 25 *Del. C.* § 7053(a)(1), which is different than 25 *Del. C.* § 7043(b) (now 7053(c)) relied upon in *Tunnell Companies, L.P.*[27]

Additionally, although the Arbitrator found it was not disputed that the documents provided by the Owner initially failed the notice requirements regarding

---

[23] *Id.*
[24] *Id.*
[25] 25 *Del. C.* § 7053(c) provides in part "[a]t or before the final meeting the community owner shall, in good faith, disclose in writing all of the material factors resulting in the decision to increase the rent." *Id.* at *6.
[26] *Id.* at *5.
[27] Appellant's Opening Br. at 21.

the HOA, the information required was readily obtainable through discovery and was provided during the discovery process. The Arbitrator further found the intent of the Rent Justification Act and the arbitration process would not be met if an "outright forfeiture of the Owner's rights to seek an above-CPI-U rent increase" occurred because of a partial non-compliance with the notice requirements.[28]

The Arbitrator's conclusion is supported by substantial evidence. Nothing in 25 *Del. C.* § 7053, any other section of the Rent Justification Act, nor the Delaware Administrative Code set forth any sort of punishment for non-compliance with the initial notice requirements. In fact, 25 *Del. C.* § 7053(j) states, "[t]he arbitrator will render a decision employing the standards under § 7052 of this title."[29] The standards under § 7052 do not state nor allude to a partial non-compliance with the initial notice requirements equating to an automatic forfeiture of an above CPI-U increase in rent.

III.  <u>The Arbitrator was Correct in Concluding the Directly Related Standard Was Met</u>

A community owner is permitted to raise a homeowner's rental rate above the average annual CPI-U increase if the community owner can justify the conditions set forth in 25 *Del. C.* § 7052. Pursuant to 25 *Del. C.* § 7052(a), a community owner must not have been found "in violation of any provision of this chapter that threatens

---

[28] Arbitrator's Decision at 16.
[29] 25 *Del. C.* § 7053(j).

the health or safety of the residents, visitors, or guests that persists for more than 15 days . . ."[30] Both parties stipulated that the Owner had not been found in violation of jeopardizing the health and/or safety of the residents, visitors, or guests.[31]

The next condition that must be satisfied is "[t]he proposed rent increase is directly related to operating, maintaining, or improving the manufactured home community, and is justified by 1 or more factors listed under subsection (c) of this section."[32] The HOA argues that the directly related standard in the statute is not met and further supports its' argument with discussion regarding expected profit returns and the previous versus current landowners return on investment expectations. The Court notes that the HOA and the Owner concentrated on language taken from 25 *Del. C.* § 7040 (now § 7050). That section states in relevant part,

> Therefore, the purpose of this subchapter is to accommodate the conflicting interests of protecting manufactured homeowners, residents, and tenants from unreasonable and burdensome space rental increases while simultaneously providing for the need of manufactured home community owners to receive a just, reasonable, and fair return on their property.[33]

---

[30] 25 *Del. C.* § 7052(a)(1).
[31] Arbitrator's Decision at 14.
[32] The justification of a factor under subsection (c) will be discussed under the next heading in this Order. 25 *Del. C.* § 7052(a)(2).
[33] 25 *Del. C.* § 7050.

The HOA dedicates much argument about what is considered a "just, reasonable and fair return" for the community owners. However, that argument appears a bit off base.

The Delaware Supreme Court case that speaks to the directly related standard is *Bon Ayre Land, LLC v. Bon Ayre Community Association*, (commonly referred to as "*Bon Ayre II*").[34] The purpose of the Rent Justification Act was fleshed out rather fully in that opinion. To better explain the HOA's misplaced argument, a brief synopsis of *Bon Ayre II* is necessary.

In *Bon Ayre II*, the community owner sought to increase the rent above the CPI-U rate.[35] However, in doing so, the community owner sought to justify the above CPI-U rent increase based on the market rent factor of § 7052(c) alone.[36] Admittedly, the community owner did not proffer any evidence towards the directly related standard of § 7052(a)(2).[37] The community owner argued that it did not need to offer evidence of the rental increase being directly related to maintaining, operating, and improving the community *and* also justify the rental increase under a § 7052(c) factor.[38] The community owner asserted it was only necessary to justify the above CPI-U rental increase one way, not both.

---

[34] *Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n*, 149 A.3d 227 (Del. 2016).
[35] *Id.*
[36] *Id.* at 230.
[37] *Id.*
[38] *Id.* (emphasis added).

The Delaware Supreme Court held that the community owner was incorrect.[39] The General Assembly intended for the community owner to meet both the directly related test and justify the increase with a factor under § 7052(c).[40] Ensuring a community owner meets both of these requirements is how the purpose of the act is fulfilled.[41] The community owner is allowed an above CPI-U rental increase if it can meet all of the requirements under § 7052. This multifaceted justification process is what keeps the homeowner protected from extraneous rental increases, while also protecting the community owner's investment, thus fulfilling the General Assembly's intent and the purpose of the Rent Justification Act.

Therefore, for the Owner's above CPI-U rental increase to be appropriate, the Arbitrator only needed to determine that the increase was directly related to operating, maintaining, or improving the community, and that a 7052(c) factor, here market rent, was also satisfied. The extended discussion regarding the previous community owner, current community owner and expected rates of return on the property was a confusion of the relevant issues and law.[42] The Arbitrator agreed, concluding that he cannot except the HOA's arguments about the previous versus current community owners expected rates of return because doing so would

---

[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] Discussion of the previous owner versus current owner's expected return rate occurs throughout these pages of the decision. *See generally* Arbitrator's Decision at 18-27.

"essentially rule out justification of a rent increase under § 7052(c) by a 'new owner by purchase' of a Park, with no 'profit history', who attempts a statutory rent increase following purchase."[43] The Court finds the Arbitrator's conclusion legally sound.

With that being said, I will now turn to the requirements of the directly related standard. To reiterate, a community owner can increase the rent if "[t]he proposed rent increase is directly related to operating, maintaining, or improving the manufactured home community . . . ."[44] The statutory requirement is modest, only needing the landowner to produce some evidence that suggests its return on the property has declined.[45] A landowner must show that a "rent increase is directly related to improving the community – a requirement that the [Supreme Court] has described as 'modest' – it suffices for the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return."[46] When a landowner invests in improving the community, it can reap the benefits of increasing the rent above inflation rates.[47]

---

[43] Arbitrator's Decision at 25.
[44] 25 *Del. C.* § 7052(a)(2).
[45] *Bon Ayre Land, LLC,* 149 A.3d at 235-36.
[46] *Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Ass'n*, 210 A.3d 725, 729 (Del. 2019).
[47] *Bon Ayre Land, LLC,* 149 A.3d at 234.

12

Here, the Owner has expended funds in the amount of $133,716.22 for capital improvements to the park.[48] The capital improvement was the construction of an on-site office to house the community management personnel.[49] The construction of the office was directly related to operating, maintaining and improving the community. This is so because community management is now conveniently located on-site, providing ease of access to the administrative personnel for the HOA and homeowners. Additionally, the expenditure likely reduced the expected return of the Owner due to the large amount of money allocated to the new office building.[50] The Arbitrator's findings were supported by substantial evidence in the record and he was correct in determining the Owner satisfied the directly related requirement pursuant to 25 *Del. C.* § 7052(a)(2).

IV. The Arbitrator was Correct in Concluding the Market Rental Rate Had Been Properly Established

The last argument the HOA advances is that the Owner failed to prove what the market rent for the community is.[51] The HOA asserts that the Market Rent report prepared by expert Jay White cannot properly establish market rent because White admittedly failed to consider the unequal bargaining power that attaches once a manufactured home is placed in the community.[52] Instead, White focused on the rent

---

[48] Arbitrator's Decision at 27.
[49] The capital improvements included not only the construction of the new office building, but the installation of a foundation, the installation of a fire hydrant, water and sewer connections, and related tree work. *Id.* at 2.
[50] *Id.* at 27.
[51] Appellant's Corrected Reply Br. at 11.
[52] *Id.*

13

of homes already situated in the community along with the rent charged in comparable manufactured home communities.[53] The HOA further argues that White's failure to consider the unequal bargaining power renders the entire report and testimony unreliable "because the most important factor in his analysis ignores the actual definition of the act."[54]

In order for the Owner to be able to raise rent above the CPI-U rate, the Owner needed to establish the directly related standard, as discussed above, and justify the increase using one of the factors listed in 25 *Del. C.* § 7052(c). The Owner used §7052(c)(7) to justify the increase. §7052(c)(7) states,

> (7) *Market rent.* – For purposes of this section, "market rent" means that rent which would result from market forces absent an unequal bargaining position between the community owner and the homeowners. In determining market rent relevant considerations include rents charged to recent new homeowners entering the subject manufactured home community and/or by comparable manufactured home communities. To be comparable, a manufactured home community must be within the competitive area and must offer similar facilities, services, amenities, and management.[55]

The HOA states that the market rent from the expert's report is not an appropriate establishment of the market rent due to the failure to consider the unequal bargaining power, which the HOA asserts is the most important factor in the analysis.[56]

---

[53] Arbitrator's Decision at 17.
[54] Appellant's Corrected Reply Br. at 11.
[55] 25 *Del. C.* § 7052(c)(7).
[56] Appellant's Corrected Br. at 11.

14

However, nothing in the language of the statute suggests that any one factor should be weighed more heavily than the others. The HOA offers no support to suggest that the unequal bargaining power aspect of § 7052(c)(7) is the most important factor and should be given more weight in the market rent analysis.

Additionally, the unequal bargaining power language that the HOA so heavily relies upon comes from a definitional section of the statute. 25 *Del. C.* § 7052(c)(7) begins with "[f]or the purposes of this section 'market rent' means . . . ." The statute further says to determine market rent, relevant considerations include rent that is charged to new homeowners entering the community *and/or* rents charged in comparable manufactured home communities.[57] Although White admitted he did not take into account the unequal bargaining power, he did analyze the market rent by researching comparable communities.[58] The Arbitrator found that White satisfied the market rent consideration because White confirmed the rents used in his analysis came from comparable communities, like the statute requires.[59] The "and/or" language in the statute permits the use of rents in comparable communities as the basis of a market rent analysis.

The Arbitrator further found the lack of examination of the unequal bargaining power required that "some adjustment need be made to the otherwise valid market

---

[57] 25 *Del. C.* § 7052(c)(7) (emphasis added).
[58] Arbitrator's Decision at 17.
[59] *Id.*

study . . . ."[60] The Arbitrator determined a rental increase schedule was appropriate, with the Owner reaching market rent rates in the fourth year of increases.[61] The rental increase schedule approach was used to afford the homeowners some relief and balance the concerns of unequal power in the Rent Justification Act.[62]

The Arbitrator was correct in concluding that the appropriate market rent was established. The expert witness appropriately analyzed the relevant consideration of rents in comparable manufactured home communities. Additionally, the Arbitrator felt it was necessary to adjust the rental increase the Owner was entitled to ensure the balancing of unequal bargaining power. There is substantial evidence to support the Arbitrator's decision.

---

[60] *Id.* at 18.
[61] *Id.* at 28.
[62] *Id.*

## Conclusion

For the reasons discussed above, the rent increase above the CPI-U rate is justified. Shady Park MHC, LLC acted in compliance with the requirements of 25 *Del. C.* § 7052. The Arbitrator's decision was supported by substantial evidence and free from legal error. The decision of the Arbitrator is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ *Mark H. Conner*

Mark H. Conner, Judge

cc: Prothonotary

17