# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANTHONY GRIFFIN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. K24A-04-006 NEP |
| | ) | |
| POLICE OFFICER STANDARDS | ) | |
| AND TRAINING COMMISSION, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: November 6, 2024
Decided: January 31, 2025

## <u>OPINION</u>

*Upon Appeal from the Decision of the Police Officer Standards and Training Commission*

## AFFIRMED

James E. Liguori, Esquire, and Gregory A. Morris, Esquire, Liguori & Morris, Dover, Delaware, *Attorneys for the Appellant*.

Joseph C. Handlon, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the Appellee*.

**Primos, J.**

Former Dover Police Department corporal Anthony Griffin appeals the decision of the Police Officer Standards and Training Commission ("POST") to revoke his certification as a law enforcement officer. Griffin argues that this case should be remanded because the record is insufficient for this Court's review and that, if the Court nonetheless considers the substance of the appeal, POST's decision should be reversed because it violated his due process rights. The Court today holds that the record is sufficient for appellate review and that POST did not violate Griffin's due process rights. Because Griffin's procedural arguments fail, the Court considers the merits of POST's decision and concludes that it was supported by substantial evidence and did not rest on any errors of law. Therefore, the Court **AFFIRMS** POST's decision to decertify Griffin.

## I.   BACKGROUND[1]

### A. The Decertification Process

Title 11, Chapter 92 of the Delaware Code, commonly called the "Law Enforcement Officer's Bill of Rights" ("LEOBOR"), generally requires an administrative hearing before an officer may be suspended or terminated.[2] If an officer has received a LEOBOR hearing and has been "discharged from employment with a law-enforcement agency for a breach of internal discipline," POST[3] *must*, by statute, either suspend or revoke that officer's certification.[4] An officer whose

---

[1] Citations in the form of "D.I. ___" refer to docket items. Citations in the form of "B.D. ___" refer to the March 5, 2024, written decision of the three-member hearing board appointed by POST (the "Board"). Citations in the form of "Ex. ___" refer to exhibits introduced by either Griffin or the City of Dover before the Board. At the Board hearing, the City of Dover initially produced exhibits marked A–G, which are inaccurately lettered in the Certification of Record's table of contents because one exhibit (Exhibit D, labeled "Notice of Disciplinary Action") is omitted from the list of exhibits. *See* Certification of Record (D.I. 4); Police Officer Standards and Training Comm'n Board Hearing Audio Recording (hereinafter "Board Audio") at 0:15. For purposes of this Opinion, the Court uses the exhibit letters and numbers used by the hearing Board (rather than those in the Certification), which are, with one exception, accurately stated in an exhibit list prepared by Stephanie J. Ballard, Esq., counsel for the City of Dover. This exhibit list is attached to the Certification. The one omission from Ms. Ballard's list is Exhibit H, Griffin's disciplinary history, which was admitted at the hearing but not previously designated. *See* Board Audio at 52:25. At the Board hearing, Griffin presented three exhibits, numbered 1–3, *see* Board Audio at 0:45. These exhibits were, respectively, a November 16 Notice of Disposition of Complaint, a February 13 employment offer letter from the Cheswold Police Department, and an October 27 letter from DELJIS informing Griffin that his access to that system had not been revoked. Though not referenced as defense exhibits in the Certification of Record, each of these documents is reproduced therein. With the exception of the letter from the Cheswold Police Department (appended to the LEOBOR board's decision), each of Griffin's Board exhibits is identically reproduced in the appendix to his Opening Brief.

The Court is cognizant that this is only the second appeal from a POST decertification. However, it should be noted that the Court's review process would have been substantially aided had it been furnished with a usable transcript, had the record been bound together and consecutively paginated for easier reference in this Opinion, and had the exhibits presented to the Board been marked and presented in order with accurate and complete identification in the Certification's table of contents.

[2] *See* 11 *Del. C.* § 9203.

[3] POST is a seventeen-member administrative body with broad authorities to, among other things, establish and certify the requirements for police officers in the State of Delaware. *See generally* 11 *Del. C.* § 8402–8404.

[4] *See* 11 *Del. C.* § 8404(a)(4)e.

3

certification has been revoked has "no authority to enforce the laws of the State."[5]

The Delaware Code also sets forth the process by which POST shall determine that an officer has received a LEOBOR hearing and been discharged, and by which POST shall thereafter decide between decertification and suspension of that officer.[6] Per the Code, the chairperson selects three members of POST to sit as a board and hear evidence.[7] This hearing is conducted in accordance with the Delaware Administrative Procedures Act.[8] Upon conclusion of the board hearing, the board submits its written findings and recommendations to the full POST for consideration and a vote.[9] Adverse rulings may be appealed to this Court.[10] This case concerns such an appeal.

### B. Statement Of Facts

The material facts underlying this appeal are undisputed.

On August 26, 2020, Anthony Griffin and other Dover Police Department officers responded to a domestic violence call in the city.[11] Griffin drove the female participant in the incident to the police station for processing.[12] The woman was considered both a victim and a suspect because the violence was apparently reciprocal.[13] After the woman was released, Griffin drove her home, and she volunteered her phone number.[14]

---

[5] 11 *Del C.* § 8410(a).

[6] *See* 11 *Del. C.* § 8404A ("In all situations where the provisions of § 8404(a)(4) or § 8410(b) of this title are to be applied to or invoked against any agency or individuals, that agency or individual shall be entitled to a hearing in the manner prescribed herein[.]").

[7] 11 *Del. C.* § 8404A(1).

[8] 11 *Del. C.* § 8404A(4).

[9] 11 *Del. C.* § 8404A(2).

[10] 11 *Del. C.* § 8404A(3).

[11] B.D. 3; LEISS report 50-20-21210 – 8/6/20 Domestic Incident (hereinafter "Domestic Incident Rep.) (Ex. F).

[12] B.D. 3; Domestic Incident Rep. (Ex. F).

[13] B.D. 6, Domestic Incident Rep. (Ex. F).

[14] B.D. 3; Decision of Crim. Just. Council Hearing Bd. (hereinafter "LEOBOR Bd. Decision") (Ex. C) at 3.

Shortly before the end of Griffin's shift on August 26, the woman texted him for the first time.[15]  Per the Board, "the text messages became sexually explicit" almost immediately, and featured "a video of the woman dancing suggestively ('twerking') and . . . a photograph of [Griffin's] . . . genitalia."[16]

Griffin's texts with the woman also directly implicated her pending criminal prosecution.  The woman expressed concerns that the prosecution would hinder her career.[17]  Griffin assured the woman that her case would be dropped.[18]

In February 2023, Griffin's photograph was included in a Dover Police Department Facebook post recognizing the Department's school resource officers.[19]  The man involved in the August 26, 2020, domestic violence incident (the "Complainant") became aware of this post (and Griffin's continued employment) and complained to the Department.[20]  As a result, Dover Police Lieutenant Kevin Streadwick (the "I.A. Investigator") conducted an internal affairs investigation into the incident.[21]  In the course of this investigation, the I.A. Investigator interviewed both the Complainant and the woman.[22]  The woman confirmed the exchange of texts and photographs.[23]

Griffin was fully cooperative with the I.A. Investigator's work, and in fact provided copies of the texts at issue.[24]  However—in anticipation of questioning from the I.A. Investigator—Griffin accessed the Delaware Criminal Justice Information System ("DELJIS") to obtain information on both the woman and the

---

[15] B.D. 3; Text messages from Anthony Griffin To M.J. (hereinafter "Text Messages") (Ex. E).
[16] B.D. 3; Text Messages (Ex. E).
[17] B.D. 3; Text Messages (Ex. E).
[18] B.D. 3; Text Messages (Ex. E).
[19] B.D. 4.
[20] *Id.*
[21] *Id.*
[22] *Id*.
[23] *Id.*
[24] *Id*.

Complainant.[25]  Although DELJIS ultimately decided not to revoke Griffin's access to its system,[26] the Board found that Griffin accessed the system without a departmental purpose.[27]

The investigation of the August 26, 2020, incident was not the first time that Griffin's interactions with women had resulted in discipline.  Griffin had previously received a 480-hour suspension, a demotion from corporal to patrolman first class, and imposition of a two-year probationary period for repeatedly visiting a particular woman's home in his patrol car while on duty.[28]  Griffin was romantically involved with this woman for two years, and his supervisors had specifically told him not to visit her in this way.[29]

Despite his disciplinary history, there is evidence that two Delaware police departments have offered to employ Griffin.[30]  These offers are conditional on Griffin's retaining his certification.[31]

### C. Procedural History

On October 12, 2023, a three-member panel appointed by the Criminal Justice Council held a hearing (the "LEOBOR Hearing") addressing eight counts of alleged misconduct brought by the Dover Police Department.[32]  The panel released a written

---

[25] *Id.*; *accord* DELJIS Web Portal User Data (Ex. G).

[26] Letter from Alyssa Huenke, DELJIS Security Manager, Delaware Criminal Justice Information System, to James Liguori, Esq. (Oct. 27, 2023) (Ex. 3).

[27] B.D. 4.

[28] B.D. 6; Disciplinary History of Anthony Griffin (Ex. H).

[29] B.D. 6.  It is unclear from the record why Griffin had been so warned, and the Board made no factual finding regarding this issue.  Griffin's testimony suggests that, while he was on duty, the woman repeatedly visited him to give him food and money.  *See* Board Audio at 55:30.

[30] B.D. 5; Letter from Christopher Workman, Chief, Town of Cheswold Police Dep't, to Anthony Griffin (hereinafter "Cheswold Job Offer") (Ex. 2).

[31] Cheswold Job Offer (Ex. 2) ("Your appointment . . . is contingent upon the retention of your certification . . . and resignation from your current employer.").  A department that hired Griffin as a police officer despite his decertification would lose eligibility for state funds.  11 *Del. C.* § 8410(b).

[32] *See generally* LEOBOR Bd. Decision (Ex. C).

summary of its findings on November 13, 2023. Of the eight counts, the panel found that four were substantiated.[33] Citing the outcome of the LEOBOR Hearing, Dover Police Department Chief Thomas A. Johnson Jr. terminated Griffin by written notice on November 16, 2023.[34] Also on November 16, 2023, POST's predecessor body, the Council on Police Training ("COPT"),[35] notified Griffin that his termination had triggered review of his certification, and that he had a right to a hearing consistent with the state Administrative Procedures Act.[36]

POST appointed a three-member hearing board (the "Board"), and the Board heard evidence on February 21, 2024.[37] The two sworn witnesses at this hearing were the I.A. Investigator and Griffin.[38] On March 5, 2024, the Board issued a written decision laying out its factual findings and unanimously recommending that Griffin be decertified as a Delaware police officer.

The full POST took up the issue of Griffin's decertification at its quarterly meeting on April 12, 2024. Griffin was allowed to speak on his own behalf and to present five character witnesses—two officers, a family friend, a local small business owner, and his mother. After some discussion and deliberation, POST voted to adopt the Board's recommendation.[39] POST formally notified Griffin of

---

[33] *Id.* The substantiated charges were a violation of the "Standard of Conduct," "Compromising Criminal Cases," and two counts related to "Computer Access." *Id.*; Notice of Disposition of Complaint of Misconduct (Ex. B).

[34] Notice of Disposition of Complaint of Misconduct (Ex. B).

[35] On August 7, 2023 POST inherited "all powers and duties formerly vested in the Delaware Council on Police Training[.]" 11 *Del. C.* § 8411; *see also* 84 Del. Laws ch. 149 § 1 (2023). It is unclear why the letter was on COPT letterhead several months after this transition.

[36] Letter from Captain Kerry Reinbold, Admin., Council on Police Training, to Anthony Griffin (Nov. 16, 2023) ("If you timely request a hearing, you will be notified of the date, time, and place of the hearing. Hearings are conducted pursuant to the Administrative Procedures Act, 29 *Del. C.* ch. 101. You will have the right to be represented by counsel, to present evidence, and to cross-examine witnesses.").

[37] B.D. 1.

[38] *Id.*; *see also generally* Board Audio.

[39] The motion carried by a voice vote of nine in favor, none opposed, and three abstentions. *See* Commission Video at 1:35:24. The abstentions included Chief Johnson of the Dover Police

7

this decision and his right to appeal to this Court within 15 days by a letter dated April 15, 2024.[40] Griffin timely filed his notice of appeal on April 29, 2024.[41]

## II. ANALYSIS

### A. Standard Of Review

Unless otherwise directed by statute, administrative appeals are subject to substantial evidence review.[42] Under this standard, the Court's "function is limited to a determination of whether there was substantial evidence sufficient to support the [administrative body's] findings, and whether they are free from legal error."[43] "Substantial evidence means 'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'"[44] If substantial evidence exists, the Court will affirm the body's decision, even if the Court might have reached different factual conclusions.[45] In other words, "when conducting substantial evidence review on appeal, 'this Court will not weigh the evidence, determine questions of credibility, or make its own factual findings.'"[46]

Issues of statutory construction and interpretation are reviewed *de novo*.[47] When

Department.

[40] Letter from Sean E. Moriarty, Ex. Dir., Police Officer Standards and Training Comm'n, to Anthony Griffin (Apr. 15, 2024).

[41] Notice of Appeal (D.I. 1).

[42] *Maurer v. Council on Police Training*, 2007 WL 625903, at *3 (Del. Super. Jan. 26, 2007) (conducting substantial evidence review of a COPT decertification decision).

[43] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 781–82 (Del. 2011) (citing *Unemployment Ins. Appeal Bd. v. Duncan*, 337 A.2d 308, 308 (Del. 1975); *Straley v. Advance Staffing, Inc.*, 984 A.2d 124, 2009 WL 3451913, at *2 (Del. Oct. 27, 2009) (TABLE)) (cleaned up).

[44] *Noel-Liszkiewics v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013) (quoting *Street v. State*, 669 A.2d 9, 11 (Del. 1995)).

[45] *Hudson v. Beebe Med. Ctr.*, 2024 WL 36063, at *5 (Del. Super. Jan. 3, 2024) (citing *Guiterrez v. Jamestown Painting*, 2019 WL 972161, at *3 (Del. Super. Feb. 26, 2019)).

[46] *Canterbury Crossing Homeowners' Ass'n, Inc. v. Canterbury Crossing MHC, LLC*, 2024 WL 4824777, at *5 (Del. Super. Nov. 6, 2024) (quoting *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022)).

[47] *Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Ass'n.*, 210 A.3d 725, 728 (Del. 2019) (citing *Bon Ayre Land, LLC v. Bon Ayre Community Ass'n (Bon Ayre II)*, 149 A.3d 227, 233 (Del. 2016)).

conducting *de novo* review of an agency's statutory interpretation, the Court's purpose is to "determine and give effect to the legislature's intent."[48]

## B. Sufficiency Of The Record

### 1. The Court may not remand this appeal to supplement the record with a POST meeting transcript.

Griffin contends that this matter must be remanded because the record below is insufficient.[49]  Per Griffin, the record is "inadequate to comprehend what transpired before" POST.[50]  Specifically, even though POST has provided the Court with an audio recording of the Board hearing and a video recording of POST's quarterly meeting, Griffin objects to the automatically-generated transcript of the latter, which "is hard to comprehend and understand as to who was speaking and what was being said by the Board Members and others."[51]  Even if Griffin is correct on this front, remand is not an avenue open to this Court for the reasons that follow.

"To the extent that this Court has appellate jurisdiction from certain boards and commissions, that jurisdiction is specifically conferred by the statute creating the board and/or commission . . . or by the Administrative Procedures Act[.]"[52] Accordingly, the Court may not remand a case to supplement the record unless such remand is specifically authorized by statute.[53]

---

[48] *Wild Meadows MHC, LLC v. Weidman*, 250 A.3d 751, 756 (Del. 2021); *accord Bon Ayre II*, 149 A.3d at 233 & n.21 (Del. 2016).

[49] Appellant's Opening Br. at 9.

[50] *Id.*

[51] *Id.*

[52] *Haden v. Bethany Beach Police Dep't*, 2014 WL 2964081, at *4 (Del. Super. June 30, 2014).

[53] *See Dalphon v. Nazario*, 1995 WL 562159, at *5 n.2 (Del. Super. Aug. 23, 1995) ("This is not a remand to expand the record.  [The relevant statute] does not empower this Court to remand to expand or add to the record.  In that instance, there can be no remand.") (citing *Wilmington Vitamin & Cosmetic Corp. v. Tigue*, 183 A.2d 731, 746–47 (Del. Super. 1962)); *cf. Collins v. Eichler*, 1991 WL 53447, at *4 (Del. Super. Mar. 25, 1991) ("This Court may not remand a case brought on an appeal pursuant to 31 *Del. C.* § 520 since the statute does not grant the Court that power.") (internal citation omitted); *Robinson v. Mroz*, 433 A.2d 1051, 1053 (Del. Super. 1981) (citing *Searles v. Darling*, 83 A.2d 96 (Del. 1951); *Tigue*).

No statute gives the Court authority to remand the instant appeal for purposes of supplementing the record. POST's enabling statute, Title 11, Chapter 84 of the Delaware Code, contains no such provision. 11 *Del. C.* § 8404A(3) merely provides that "any ruling adverse to any party participating in the hearing may be appealed to the Superior Court within 15 days of receipt of written notification of said finding." 11 *Del. C.* § 8404A(4) does require that "[a]ll hearings shall be conducted in accordance with the Administrative Procedures Act." Similarly, 1 *Del. Admin. C.* § 801–19.2.4, which governs POST, provides that "all hearings shall be conducted in accordance with the Administrative Procedures Act of the Delaware Code." However, an appeal to this Court is not a POST hearing, so these provisions are inapposite.[54]

Even if the current procedural posture could be characterized as a "hearing," the APA provision granting this Court a power of remand to supplement the record—29 *Del. C.* § 10142(c)—is inapplicable because POST is not one of the specifically enumerated agencies to which the power pertains.[55] 29 *Del. C.* § 10161(b) provides that, if an agency is not one of those listed in § 10161(a), the agency is "only subject to subchapters I and II of [Title 29, Chapter 101, which comprises the APA], and §§ 10141, 10144, and 10145 of [Title 29]." POST is not

---

[54] 11 *Del. C.* §8404A(2) references "the [singular] hearing provided for in this section." The apparent referent is the Board hearing. *Compare* 11 *Del. C.* § 8404A(1) ("[A] board . . . will *hear evidence . . .*") *with* 11 *Del. C.* § 8404A(2) ("*Upon conclusion of the hearing* provided for in this section, the board shall submit its findings and recommendation to the full commission in writing for *consideration and vote.*") (emphasis supplied). Similarly, 1 *Del. Admin. C.* § 801–19.2 provides that officers are entitled only "to a [singular] hearing." § 801–19.2.2 likewise references "the [singular] hearing provided for in this Section." In other words, the applicable statutory and regulatory framework anticipates that only one APA-compliant hearing will be held: the hearing before the Board. Neither POST's consideration and vote upon the Board's recommendation nor the appeal to this Court is a "hearing" for APA purposes.

[55] *See* 29 *Del. C.* § 10142(c) ("The appeal shall be on the record without a trial de novo. If the Court determines that the record is insufficient for its review, it shall remand the case to the agency for further proceedings on the record."); 29 *Del. C.* § 10161(a)–(b) (limiting the application of § 10142(c) to certain enumerated agencies).

10

an agency listed in § 10161(a), and § 10142(c) is not one of the statutory provisions listed in § 10161(b).

Nor does LEOBOR, contained in Title 11, Chapter 92, of the Delaware Code, empower the Court to remand this case. Indeed, LEOBOR does not contain any provision for appellate process.[56]

"The goal of statutory construction is to determine and give effect to legislative intent."[57] On their face, and without ambiguity, the relevant statutes do not give this Court a power of remand under these circumstances, and the Court should not, therefore, read such an authority into the law.[58] To the extent that 11 *Del. C.* § 8404A(4)'s reference to the APA creates any ambiguity, that ambiguity does not extend to the issue of remand. A comprehensive understanding of the statutory scheme accords with the plain meaning of the text. "If a statute is ambiguous, it should be construed in a way that will promote its apparent purpose and harmonize with other statutes."[59] Construing § 8404A(4) to give this Court a power of remand to supplement the record would inappropriately and

---

[56] *See Mock v. Div. of State Police, Dep't of Safety and Homeland Sec.*, 2022 WL 1744439, at *4 (Del. Ch. May 31, 2022) ("[LEOBOR] does not make any provision for judicial appellate review[.]") (citing *Haden*, 2014 WL 2964081, at *2 ("[T]his Court has clearly held in prior precedent that it does not have jurisdiction over appeals from decisions rendered pursuant to LEOBOR.")); *accord Smith v. Dep't of Public Safety of State*, 1999 WL 1225250, at *11 (Del. Super. Oct. 26, 1999) ("This Court has previously held that it does not have jurisdiction to hear appeals from decisions rendered by an appeal panel pursuant to LEOBOR because such jurisdiction has not been conferred by either the Constitution or statutes of this State.") (citing *Westcott v. City of Milford Police*, 1995 WL 465188, at *4 (Del. Super. July 31, 1995)).

[57] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999) (citing *Street*, 669 A.2d at 12).

[58] *See Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011) ("If it is unambiguous, then we give the words in the statute their plain meaning.") (citing *Dewey Beach Enters., Inc. v. Bd. of Adjustment*, 1 A.3d 305, 307 (Del. 2010)).

[59] *Eliason*, 733 A.3d at 946 (citing *E.I. Du Pont De Nemours & Co. v. Clark*, 88 A.2d 436 (1952); *Hamilton v. State*, 285 A.2d 807 (Del. 1971)); *accord Canterbury Crossing*, 2024 WL 4824777, at *10 n.177 (quoting *Bon Ayre II*, 194 A.3d at 233 n.10 (Del. 2016); *Taylor*, 14 A.3d at 538 (Del. 2011)).

disharmoniously read out of the APA 29 *Del. C.* § 10161(a)'s exclusive[60] list of the agencies to which the Court may remand.

Persuasive in the instant appeal is this Court's opinion in *Maurer v. Council on Police Training*, which interpreted the same apparent conflict between COPT's enabling statute (which used identical language to incorporate the APA's hearing provisions by reference) and 29 *Del. C.* § 10161's exclusion of that body from the full panoply of APA provisions.[61] The *Maurer* Court harmonized the two statutes by concluding that the enabling act intended to incorporate the APA's hearing provisions—Subchapter III of the APA—but no others.[62] Specifically, the Court noted that Subchapter V, which governs judicial review, did not apply, because Subchapter V does not concern the conduct of hearings.[63] 29 *Del. C.* § 10142(c), the only APA provision that mentions a judicial power of remand, is contained within Subchapter V, and therefore inapplicable to POST appeals under *Maurer*'s reasoning.

## 2. The record before the Court is sufficient for substantial evidence review.

Since the Court may not remand this case to expand the record, it must determine whether any inadequacies of the record prevent it from performing its function in this appeal. Griffin is correct that the computer-generated transcript of

---

[60] *See* 10 *Del. C.* § 10161(a) ("This chapter shall apply *only* to the following agencies . . . .") (emphasis supplied); 10 *Del. C.* § 10161(b) ("*All* agencies which are not listed in subsection (a) of this section shall *only* be subject to subchapters I and II of this chapter and §§ 10141, 10144 and 10145 of this title.") (emphasis supplied).

[61] 2007 WL 625903, at *5 (quoting the applicable statutory provision that "[i]n all situations where the provisions of § 8404(a)(4) . . . of this title are to be applied to or invoked against any . . . individual, . . . that individual shall be entitled to a hearing in the manner prescribed herein: . . . (4) *All hearings shall be conducted in accordance with the Administrative Procedures Act*.") (emphasis supplied).

[62] *Id.* at *6 & n.15.

[63] *Id.* at *6 n.15 ("The COPT statute is adopting the APA's Cpt. 101 Subchapter III (Case Decision) and § 10142(b) is part of the APA's Cpt. 101 Subchapter V (Judicial Review), which the COPT statute does not adopt.").

12

POST's April 12, 2024, meeting is garbled and difficult to follow. The transcript makes frequent errors as to what was said, and typically does not differentiate between speakers. The Court agrees that this transcript is unreliable in its current form and thus does little to supplement the record. However, the record contains both a video recording of the POST meeting and an audio recording of the prior Board hearing. Additionally, the record includes copies of a certified letter notifying Griffin of his potential decertification and right to a Board hearing; every exhibit submitted into evidence before the Board; the Board's written decision; and a letter from POST to Griffin notifying him of his decertification and right of appeal to this Court.[64] This record is sufficient for the Court to determine whether POST's decision to decertify Griffin was supported by substantial evidence and whether it rested on errors of law.

When conducting substantial evidence review, the Court is "require[d]" to "search the entire record."[65] This requirement, however, implicates two questions: what constitutes "the record," and when is the record insufficient for the Court to conduct its review on appeal? The Court need not comprehensively answer these questions to dispose of this case. It is adequate to conclude that the record need not include a transcript in all cases and that where, as here, a recording of proceedings is provided in lieu of a transcript, the absence of a reliable transcript does not prevent the Court from conducting its review. Under these circumstances, a transcript would not expand the record, but would merely make the case more amenable to speedy review and disposition by the Court.

---

[64] Certification of Record signed by Gina M. Corona, Administrative Specialist III, Delaware Police Officer Standards and Training Commission (July 8, 2024) (certifying the paper record filed with this Court as D.I. 4 and listing the contents thereof).
[65] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674–75 (Del. Super. 1980); *accord Fasano v. Delaware Dep't of Nat. Res. & Env't Control*, 2024 WL 469638, at *2 (Del. Super. Feb. 2, 2024); *Hudson*, 2024 WL 36063, at *5.

Superior Court Civil Rule 72(e) provides that agencies' custodians of record shall furnish the Court with "a certified copy of the record of the proceedings below, including a typewritten copy of the evidence," unless the parties agree that such a copy is unnecessary and file a stipulation so indicating with the agency within 10 days from the filing of the notice of appeal.[66] 29 *Del. C.* § 10125(d), which is applicable to POST consistent with *Maurer*,[67] provides that "[a] record *from which a verbatim transcript can be prepared* shall be made of all hearings in all contested cases" and that "[t]ranscripts shall be made at the request and expense of any party."[68] Thus, 29 Del. C. § 10125(d) contemplates the preparation of a verbatim transcript only if a party requests and pays for it.

POST filed a certified copy of the record with this Court on July 8, 2024. That copy, as noted *supra*, included an audio recording of the February 21, 2024, Board hearing, and a video recording of the April 12, 2024, POST meeting, but did not include a reliable transcript of either proceeding. As noted in footnote 54, *supra*, the February 21 Board hearing was the singular hearing contemplated by the relevant statutes. As such, the April 12 POST meeting was *not* such a hearing, and therefore 29 Del. C. § 10125(d) did not even require that a record from which a verbatim transcript could be prepared be made of the April 12 POST meeting—the only proceeding which Griffin now complains lacks an adequate transcript. Even if it could be argued that the phrase "typewritten copy of the evidence" in Rule 72(e) would require a written transcript of the April 12 POST meeting, Griffin at no time either requested or paid for such a transcript. Thus, he cannot be heard to complain that the record is incomplete.

Furthermore, the nature of substantial evidence review itself supports the

---

[66] Super. Ct. Civ. R. 72(e).
[67] 29 Del. C. § 10125(d) is included in Subchapter III of the APA.
[68] 11 *Del. C.* § 10125(d) (emphasis supplied).

14

conclusion that the record currently before the Court is sufficient. Substantial evidence review serves a narrow purpose and imposes certain limitations on this Court. "Only when there is no satisfactory proof to support a factual finding . . . may the Superior Court overturn that finding."[69] The Court does not "weigh the evidence, determine questions of credibility, or make its own factual findings."[70] The evidence supporting POST's decision need not be such as the Court would independently consider adequate to justify the decision, but merely "such relevant evidence as a reasonable mind might accept"[71]—more than a scintilla, but less than a preponderance of the evidence.[72] A transcript of proceedings is not essential for the Court to conclude that a "reasonable mind" could be persuaded of POST's decision. Even in the absence of a reliable transcript, the Court has before it everything considered, and everything said, at POST's April 12, 2024, meeting.

Delaware courts' practice in the analogous area[73] of zoning appeals further supports the Court's conclusion on this issue. Zoning appeals, much like this one, turn on the substantial evidence standard.[74] Zoning decisions may not be arbitrary and capricious, and local zoning authorities must therefore establish the bases for their actions, lest authorities "thwart[] the ability of a court to provide effective

---

[69] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (quoting *Noel-Liszkiewics*, 68 A.3d at 191).

[70] *Zayas*, 273 A.3d at 785 (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

[71] *Powell*, 223 A.3d at 870 (quoting *Guardado*, 152 A.3d at 118).

[72] *Id.* (quoting *Noel-Liszkiewicz*, 68 A.3d at 191).

[73] *See New Castle County Council v. BC Dev. Assocs.*, 567 A.2d 1271, 1275 (Del. 1989) ("[I]n the realm of rezoning, the power of [the county council] is analogous to that of an administrative agency, since the fundamental power to regulate land use rests with the General Assembly."); *accord 330 Hospitality Group, LLC v. City of Rehoboth Beach*, 2024 WL 3520448, at *5 (Del. Super. July 23, 2024); *Sussex Medical Investors, L.P. v. Delaware Health Res. Bd.*, 1997 WL 524065, at *4 (Del. Super. Apr. 8, 1997).

[74] *See Rehoboth Art League, Inc. v. Bd. of Adjustment of Town of Henlopen Acres*, 991 A.2d 1163, 1166, 1168 (Del. 2010) (applying the substantial evidence standard to the denial of a zoning variance).

review."[75]  Nonetheless, as the Chancery Court noted in one zoning appeal, "the burden of creating a sufficient evidentiary record is not a particularly demanding one."[76]  A zoning authority must *either* "state on the record its reasons" *or* "create a record" that is "an adequate substitute for a more formal explanation" because the authority's reasons are "clear" therefrom.[77]

The sufficiency of the record in this case may be gleaned from the Supreme Court's description of what renders a zoning appeal record *insufficient*.  The Court has instructed that reviewing courts should not be "left to guess" which factors contributed to an authority's decision and held that "a murky picture of the reasoning underlying" that decision "provides an inadequate basis for judicial review."[78]  As such, the Court has suggested that for "particularly complex zoning application[s]" with "a large body of conflicting evidence . . . a formal statement of [the zoning authority's] findings would greatly aid the process of judicial review."[79]  Here, the Court need not guess at the reasoning for POST's decision to decertify Griffin.  The reasons justifying Griffin's decertification are clear from the Board's formal written decision and the exhibits thereto.  This is not a complex case, and the material facts are not in dispute.  Thus, the record is sufficient, notwithstanding the absence of a clearly written transcript of either the February 21 hearing or the April 12 meeting.

### C. Griffin's Due Process Rights

Griffin contends that POST violated his due process rights in two ways: first, by not requiring the Board members to recuse themselves from the April 12, 2024,

---

[75] *BC Dev. Assocs.*, 567 A.2d at 1276.

[76] *O'Neill v. Town of Middletown*, 2006 WL 4804652, at \*36 (Del. Ch. Jan. 18, 2006) (citing *BC Dev. Assocs.*, 567 A.2d at 1277–78).  *See also id.* at \*36 n.297 (describing the applicable standard as "relatively low" and stating that "evidence constituting 'substantial evidence' may, in some instances, require relatively little in order to satisfy judicial review requirements," such as when "consistency with the comprehensive plan is . . . obvious.").

[77] *BC Dev. Assocs.*, 567 A.2d at 1276 (citing *Tate v. Miles*, 503 A.2d 187, 191 (Del. 1986)).

[78] *Id.* at 1277.

[79] *Id.*

vote on Griffin's decertification; and second, by considering evidence that had not been presented to the Board. The former claim fails because the Board members were not obligated to recuse themselves, and because Griffin waived his objection by failing to raise it at POST's April 12 meeting. The latter claim fails because the only new evidence considered by the full POST was that presented by Griffin himself, and Griffin cannot claim actual prejudice from the consideration of this evidence.

"[A] necessary element of any judicial review is that claims of unfairness in the administrative process be seriously addressed."[80] Nonetheless, appellants raising such claims in administrative appeals must pass a high bar. "In order to prevail on a procedural due process claim, a party must demonstrate the existence of a protected property interest and show the deprivation of that interest without notice and [an] opportunity to be heard."[81] "Due process essentially requires that an individual be given a full and fair hearing before an impartial tribunal at a meaningful time and in a meaningful manner."[82] The due process requirements for administrative hearings are less stringent than those for judicial hearings.[83] Due process is satisfied when a party to the administrative process is given "a full opportunity to answer the

---

[80] *Sokoloff v. Bd. of Medical Practice*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010) (quoting *Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466, 472 (Del. 1989)).

[81] *Id.* (citing *Pravetz v. State Bd. of Med. Practice*, 2003 WL 21203304, at *6 (Del. Super. May 21, 2003)). For purposes of this Opinion, the Court assumes, without deciding, that Griffin's certification is a property interest to which due process rights attach. *Accord Husbands v. Delaware Dep't of Educ.*, 227 A.3d 558, 2020 WL 1814045, at *1–2 (Del. Apr. 7, 2020) (ORDER) (declining to decide whether the appellant had due process rights in his teaching license and certification, where the appellant failed to identify any defects in the process by which they were revoked).

[82] *Husbands*, 2020 WL 1814045, at *1 (quoting *Cook v. Oberly*, 459 A.2d 535, 538 (Del. Ch. 1983)).

[83] *BCBSD, Inc. v. Denn*, 2008 WL 1838462, at *4 (Del. Super. Apr. 22, 2008) (citing *Hibbard Brown & Co., Inc. v. Hubbard*, 1992 WL 389927, at *3 (Del Ch. Dec. 23, 1992), *rev'd on other grounds*, 633 A.2d 345 (Del. 1993)).

charges."[84]  The administrative agency "need not 'enumerate precisely every event to which a hearing examiner may finally attach significance.'"[85]  Even if there is a defect in the administrative process, an appellant cannot prove that the appellant's due process rights were violated absent a showing of actual prejudice.[86]

### 1. There was no legal requirement that the members of the Board recuse themselves from the POST vote, and Griffin waived any objection to Board members' voting.

Griffin objects to the fact that the members of the three-member Board "participated in the decision as to whether or not to accept their factual findings and decision below."[87]  Griffin contends that this violates "common sense" and constitutes an error of law.[88]  Because Griffin alleges an error of law, the Court reviews this question *de novo*.

11 *Del. C.* § 8404A, which sets forth the requirements for POST hearings, contains no requirement for the recusal of Board members.  Indeed, § 8404A(1) requires that the three-member hearing Board be drawn from the POST Commissioners.[89]  § 8404A(2) requires that "the board . . . submit its findings and recommendation to *the full commission* in writing for consideration and vote."[90]  No provision excludes Board members from this vote.  Contrary to the plain language of the statute, such an exclusion would necessarily mean that the "full commission" would not be voting.  This reference to a vote of the "full commission," combined with the requirement that the Board be drawn from POST's Commissioners, evinces

---

[84] *Husbands*, 2020 WL 1814045, at *2 (quoting *Denn*, 2008 WL 1838462, at *4).

[85] *Denn*, 2008 WL 1814045, at *5 (quoting *Hibbard*, 1992 WL 389927, at *4).

[86] *Agbemehia v. Delaware Bd. of Nursing*, 2024 WL 66047, at *7 (Del. Super. Jan. 5, 2024) (citing *Sandefur v. Unemployment Ins. Bd. of the State of Delaware*, 1993 WL 389217, at *5 (Del. Super. Aug. 27, 1993)).

[87] Appellant's Opening Br. at 10.

[88] *Id.*

[89] 11 *Del. C.* § 8404A(1) ("The chairperson shall select 3 members of the Commission to comprise a board which will hear evidence on the allegation[.]").

[90] 11 *Del. C.* § 8404A(2) (emphasis supplied).

a legislative intent for Board members to fully participate in decertification votes.

Griffin's argument would fail even if the Board should have recused itself from POST's decertification vote. Griffin waived his objection by failing to raise it at the April 12, 2024, POST meeting. A party who fails to raise a disqualification issue may not seek to set aside the results of a vote when the basis for the disqualification was known by the party prior to the meeting at which the vote was held.[91] The fact that Griffin now asserts necessitated recusal—i.e., that three members of POST served on the Board—was known to him at the time POST convened to vote on his decertification. Even if he were correct that recusal was warranted, therefore, Griffin could not raise the issue for the first time in this appeal.[92]

### 2. POST did not violate Griffin's due process rights by considering evidence not heard by the Board.

Griffin's second due process claim rests on the related premises that POST heard new evidence not considered by the Board and that Griffin therefore lacked both notice of the evidence and an adequate opportunity to test that evidence.[93] It is certainly true that due process requires "fair notice of the scope of the proceedings and . . . adherence . . . to the stated scope of the proceedings."[94] It is also true that

---

[91] *Town of Cheswold v. Vann*, 947 A.2d 1123, 2007 WL 1201716, at *3 (Del. Apr. 23, 2007) (ORDER) (quoting *Copeland v. Manuel*, 653 A.2d 304, 1994 WL 665257, at *2 (Del. Nov. 22, 1994) (ORDER)).

[92] *Id.* (police chief terminated by town council could not raise bias of council members on appeal, where the circumstances allegedly indicating that bias were known prior to the council meeting but the chief did not seek to disqualify them).

[93] Appellant's Opening Br. at 5 ("The nature of the Appeal in this matter is that [POST] abused their discretion and committed errors of law by considering additional information and evidence that was never presented to the lower Hearing Board which was appointed to review all the facts of the incident in 2020."); *id.* at 7 ("The inherent and fundamental flaw in the [POST decision] is that it vitiated the entire hearing process. The . . . Commission chose to include new information and evidence not considered by the Hearing Board.").

[94] *Vincent v. Eastern Shore Markets*, 970 A.2d 160, 164 (Del. 2009) (citing *Philips v. Delhaize America, Inc.*, 2007 WL 2122139, at *2 (Del. Super. July 20, 2007)).

an appellant has "the right of controverting, by proof, every material fact which bears on the question of right in the matter[.]"[95]  Griffin's argument, however, lacks any support in the record.  To the contrary, all of the "new evidence" of which Griffin complains was either not new, not evidence, or not prejudicial.[96]

Griffin first points to a statement by Dover Police Department Chief Johnson regarding the reason that the Complainant raised the events of August 26, 2020, so long after the incident:

> There was a disciplinary event that took place in my first year, in 2020, that prompted a lengthy suspension.  And this is anecdotal, because I never actually spoke to the gentleman, but secondhand, my understanding is that he thought that disciplinary event was related to the incident that is before us right now . . . .  So he was under the mistaken impression that something had been done when he came in to complain the first time.[97]

Griffin is simply incorrect that this was new information not presented to the Board.  Before the Board, the I.A. Investigator testified that the Complainant "sa[id] that he thought [Griffin] was fired . . . .  Originally he said he came to the police department after this August of 2020 incident . . . and he thought it was dealt with then."[98]  Chief Johnson merely restated the testimony of the I.A. investigator.  Thus, Griffin cannot credibly argue that his due process rights were violated by the Chief's comments.

Griffin next objects to a Commissioner's comments suggesting that the Board hearing may not have been as in-depth as any investigation conducted by the two departments that subsequently offered Griffin jobs, and noting that those agencies'

---

[95] *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[96] The following description of Griffin's arguments summarizes the comments actually made at POST's April 12, 2024, meeting for the sake of clarity, rather than reproducing the purported statements contained in Griffin's filings.  Griffin's briefs rely on the garbled automated transcript of the meeting and attempt to give "context" for why portions thereof are objectionable.

[97] April 12, 2024, Police Officer Standards and Training Comm'n Meeting Video Recording (hereinafter "Commission Video") at 1:04:30.

[98] Board Audio at 25:59.

willingness to employ Griffin gave him "pause."[99] These were merely comments on the evidence—part of POST's role in deliberating and voting on the Board's recommendation. Further, even if these comments could be characterized as "new evidence," they were not prejudicial to Griffin, as they echoed the very arguments he wished POST to accept: that, notwithstanding the Board's recommendation, Griffin was a redeemable police officer, as evident from his employability. Griffin cannot credibly claim actual prejudice because POST considered evidence he put before them himself,[100] and certainly not because a Commissioner found it persuasive. Thus, Griffin's due process rights were not violated on this ground.

Relatedly, Griffin objects to a Commissioner's comment that he "[did not] know . . . what if any background those chiefs [that subsequently offered Griffin jobs] had done prior to issuing that [employment offer] letter. So we know that we were told that there were two conditional offers, but we don't know if they've already done the background or not."[101] This was merely a comment on the evidence, or the absence or ambiguities thereof. Griffin's due process rights were not violated simply because POST deliberated.[102]

Griffin further objects to the comments of a Commissioner who noted that only one of the employment offers Griffin received was documented at the time of the Board hearing[103] and asked whether there was a procedure for another

---

[99] Commission Video at 1:06:28.

[100] *Agbemehia*, 2024 WL 66047, at *7 ("[Appellant] cannot show any *actual* prejudice stemming from the Board considering [his] *own* exhibits in the Board's deliberations. Accordingly, the Board did not violate [his] due process rights.") (emphasis in original).

[101] Commission Video at 1:12:38.

[102] Indeed, deliberation is arguably one element of due process. *See Warrington v. State,* 1994 WL 387028, at *2–3 (Del. Super. July 14, 1994) (reversing and remanding a decision where the officer that cast the deciding vote "did not see the witnesses or participate in the deliberations[.]").

[103] Appellant's Opening Br. at 8. This was an accurate statement. Before the Board, Griffin represented that Delaware State University "didn't want to put anything in writing" about the offer, Board Audio at 20:45, and that the University had "recommended [Griffin] for hire" but was "waiting on paperwork." *Id.* at 45:15.

21

evidentiary hearing that would allow the Board to further consider the second offer before deciding whether to revise its recommendation.[104]  Griffin does not explain why this inquiry would be problematic, and no reason is evident to the Court.

Also raised by Griffin is a Commissioner's comment that "those [character] witnesses that [Griffin] had in today . . . should have been at the hearing . . . and had they been at the hearing we might not be here . . . right now."[105]  Griffin describes these comments as "questioning [the Commissioner's] opinion of the evidence at [the] below hearing"[106] but otherwise fails to specify why the comments would be objectionable.  Griffin certainly cannot claim prejudice because a Commissioner argued that the Board could have found his witnesses compelling.  Moreover, as stated previously Griffin cannot claim prejudice from new evidence provided by his own character witnesses.[107]  More disquietingly, in response to the Commissioner's comments, Griffin claimed that he was "not told" that he could have witnesses at the Board hearing.[108]  However, this claim is belied by the certified letter notifying Griffin of his termination and right to a Board hearing before decertification, which stated that Griffin had "the right to be represented by counsel, to present evidence, and to cross-examine witnesses."[109]  Likely for this reason, Griffin does not make this same claim on appeal.  For all these reasons, Griffin's due process rights were not violated on this ground.

Lastly, Griffin objects to a comment that "we have to be careful in this proceeding not to present new evidence against Mr. Griffin."[110]  Griffin claims that

---

[104] Commission Video at 1:16:58.
[105] Commission Video at 1:23:46.
[106] Appellant's Opening Br. at 9.
[107] *See* Note 100, *supra*.
[108] Commission Video at 1:24:00.
[109] Letter from Captain Kerry Reinbold, Admin., Council on Police Training, to Anthony Griffin (Nov. 16, 2023).
[110] Commission Video at 1:30:35.

the speaker "admit[ted] new evidence ha[d] been discussed" at the POST meeting.[111] On the contrary, the speaker immediately stated that he "[didn't] think [POST] ha[d] gone there yet."[112]  Far from evidencing a violation of Griffin's due process rights, these comments show that POST was cognizant of, and wanted to avoid violating, those rights.

Upon a comprehensive review of the recordings of the Board hearing and POST meeting, as well as all other components of the record, the Court finds that the full POST considered only two categories of new evidence: the testimony of Griffin's character witnesses and potential documentation for the previously-disclosed job offer from Delaware State University.[113]  This new evidence, presented by and in support of Griffin, did not prejudice him, and as a result could not violate his due process rights.  Griffin's arguments to the contrary, to the extent that any arguments are proffered, are meritless.  Griffin had a fair opportunity of controverting the case against him at the Board hearing.  POST afforded Griffin adequate due process.

### D. Substantial Evidence Review

As the Court has determined that the record before it is sufficient and that Griffin was afforded due process, it must evaluate whether, in light of the record, POST's decision to decertify Griffin was properly supported pursuant to the deferential substantial evidence standard.[114]  Since the facts underlying this case are undisputed, the Court evaluates whether those facts constitute substantial evidence

---

[111] Appellant's Opening Br. at 9.

[112] Commission Video at 1:30:45.

[113] From reviewing the recording of the April 12, 2024, POST meeting, it appears that no offer letter from Delaware State University was ever offered into evidence, though said offer was discussed, and some Commissioners appeared to view the offer as new information. *See id.* at 1:17:05, 1:27:20.  As such, there is no copy of an offer letter from the University, if such letter exists, in the record.

[114] *See supra* Section II(A).

in support of POST's conclusion that decertification, rather than certification suspension, was warranted in Griffin's case. Upon a review of the full record, the Court concludes that substantial evidence supported this decision.

The rationale for POST's decision may be inferred from the Board's recommendation thereto. The Board stated that POST had historically "reserved decertification for cases where an officer's misconduct implicates honesty and integrity or where an officer's conduct places the public or fellow officers at risk of harm."[115] As to Griffin's case, the Board noted that Griffin "showed severe lack of judgment" and that he "took advantage" of the "vulnerability" of a woman "in a severely compromised position."[116] Moreover, Griffin's unprofessional and explicit text messages threatened the then-pending prosecution of the woman.[117] This misbehavior was even more troubling in light of his history of insubordinately associating with another woman while on duty, resulting in a 480-hour suspension, demotion, and imposition of a 2-year probationary period.[118] The Board concluded that the evidence "support[ed] a finding of calculated intentional misconduct" that merited decertification.[119]

The Board's conclusion, adopted by POST, is reasonable in light of the facts in evidence, which were fully developed and documented through the LEOBOR and Board hearings. Griffin's behavior on August 26, 2020, raised serious doubts as to his integrity. It threatened public safety because the texts may have been discoverable and effective impeachment material in a prosecution of either the woman or the Complainant. The events of August 26, 2020, would likely have merited decertification on their own. However, the Board justifiably viewed the

---

[115] B.D. 8.
[116] *Id.*
[117] *Id.*
[118] *Id.* at 8–9.
[119] *Id.* at 9.

August 26 incident in light of Griffin's prior disciplinary history concerning women. The details of that prior behavior remain somewhat cloudy, but POST could reasonably conclude, as the Board did, that "the conduct must have been serious to merit the severe discipline that DPD" imposed for it, particularly given the harsh language in Chief Johnson's termination letter.[120] This was a permissible inference for POST to make.[121]

---

[120] *Id.* at 8. The letter read, in relevant part, as follows: "A review of [Griffin's] disciplinary history indicates that no amount of corrective action has resulted in a sustained change in his behavior or altered his propensity to commit serious policy violations . . . . On a regular and recurring basis, Anthony E. Griffin, Sr. follows his own rules rather than the written directives of his employer." Notice of Disposition of Complaint of Misconduct (Ex. B).

[121] *Cf. Donovan Smith HOA v. Donovan Smith MHP, LLC*, 190 A.3d 997, 2018 WL 3360585, at *1 (Del. 2018) (ORDER) (arbitrator could infer that installing a driveway to each unit of a manufactured home community and repainting the community's maintenance building entailed "substantial cost," and that, "without an increase in rent, the [landlord's] rate of return [on investment] would have been reduced," even though no evidence of the costs was presented); *accord Canterbury Crossing*, 2024 WL 4824777, at *8 ("While some of the evidence cited by the Arbitrator did not directly pertain to the statutory requirements, their satisfaction was a fair inference from the evidence the Landlord presented.").

## III. CONCLUSION

For the foregoing reasons, the Court finds that POST's April 15, 2024, decision was supported by substantial evidence, that it did not rest on any errors of law, and that the process by which it was made did not violate Griffin's due process rights.

**WHEREFORE**, POST's decision of April 15, 2024, is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge


NEP/tls

*Via File & ServeXpress*

oc:  Prothonotary

cc:  Counsel of Record